**BIOSERA, INC., a Colorado corporation, Plaintiff–Appellant and Cross–Appellee,**

**v.**

**FORMA SCIENTIFIC, INC., Defendant–Appellee and Cross–Appellant.**

No. 95CA0974.

Colorado Court of Appeals, Div. V.

Oct. 24, 1996.

Rehearing Denied Dec. 19, 1996.

Cross-Petition for Certiorari Granted July 21, 1997.

Holland & Hart, Harry Shulman, Eric L. Hilty, Marcy G. Glenn, Denver, for Plaintiff–Appellant and Cross–Appellee.

Montgomery Little & McGrew, P.C., William H. ReMine, Englewood, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge RULAND.

This is an action to recover damages for the loss of products stored in an ultra-cold freezer manufactured by defendant, Forma Scientific, Inc. Plaintiff, BioSera, Inc., appeals from the trial court's ruling on the measure of damages applicable to some of the products. Defendant cross-appeals challenging a jury instruction and an evidentiary ruling. We affirm.

Plaintiff collects and sells white and red blood cell antibodies used in the health care industry for various testing purposes. Plaintiff purchased the freezer to store blood cell antibodies as well as so-called "stim cells" that are used to stimulate the production of red cell antibodies in certain donors. This case arises from an incident in which the freezer was accidently turned off resulting in the destruction of all the products contained in the unit.

Plaintiff asserted claims for breach of warranty, strict liability in tort, and manufacturer's negligence based on the design of the freezer's power switch. Prior to trial, the breach of warranty claim was dismissed.

In addition, the court granted defendant's motion for partial summary judgment relative to damages recoverable on the strict liability claim and thus precluded plaintiff from recovering approximately $15 million in income it allegedly lost because of the destroyed stim cells. The trial court determined the damages for the replacement costs of the antibodies to be approximately $249,-000.

At trial, the jury returned verdicts for defendant on the negligence claim and for plaintiff on the strict liability claim. The verdict also apportioned comparative fault between the parties on the strict liability claim.

I

Plaintiff contends that the trial court erred in ruling that it could not recover the profits lost as a result of the destruction of the stim cells. In support of this contention, plaintiff relies upon testimony of its damages expert that the replacement cost approach should not apply in this case because the stim cells could not be replaced on an expeditious basis. Plaintiff further contends that lost profits should be awarded in a strict liability case if the injury is to property other than the defective product itself. However, we agree with the court's ruling.

In *Hiigel v. General Motors Corp.*, 190 Colo. 57, 544 P.2d 983 (1975), our supreme court adopted § 402A of the Restatement (Second) of Torts § 402A (1981) which provides that:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability *for physical harm* thereby caused *to the ultimate user* or consumer, *or to his property* . . . .

(emphasis supplied)

The plaintiff in that case claimed damages for the loss of business use of a vehicle because of certain defects.

In applying Restatement § 402A, the *Hiigel* court held that a plaintiff can recover damages for physical harm to the product itself, but not for commercial or business loss. *See also Aetna Casualty & Surety Co. v. Crissy Fowler Lumber Co.*, 687 P.2d 514 (Colo.App.1984).

Plaintiff argues that *Hiigel* does not support the trial court's ruling here because the supreme court did not specifically address whether economic damages may be recovered if the physical injury is to property other than the defective product. Plaintiff further contends that we should follow the reasoning of those cases in other jurisdictions that allow recovery for this type of economic loss. *See Salt River Project Agricultural Improvement & Power District v. Westinghouse Electric Corp.*, 143 Ariz. 368, 694 P.2d 198 (1984); *see also Annot., Products Liability—Lost Profits*, 89 A.L.R.4th 11 (1991). We are not persuaded.

■ In our view, the concept urged by plaintiff here would create an anomaly. Specifically, if the loss of income in this case had resulted because the freezer malfunctioned and could not be replaced or repaired before the stim cells were destroyed, *Hiigel* would preclude recovery of the commercial losses based upon loss of use of the freezer. However, under plaintiff's rationale, the lost income would be recoverable even though the freezer continued to function. We do not read *Hiigel* to support such a result.

Therefore, based on *Hiigel*, we conclude that plaintiff may not recover economic damages flowing from the loss of its stim cells. *See also Nelson v. Todd's Ltd.*, 426 N.W.2d 120 (Iowa 1988) (plaintiff may not recover economic damages under Restatement § 402A when a product designed to prevent harm to a purchaser's property fails to work, resulting in the very harm sought to be prevented).

## II

In the alternative, plaintiff also contends that the trial court erred in prohibiting it from using an income approach to value the loss of the stim cells. Again, we are not persuaded.

■ Generally, the measure of damages for injury to personal property is the difference between its market value immediately before and after the injury. *See State v. Morison*, 148 Colo. 79, 365 P.2d 266 (1961). Nevertheless, plaintiff argues that the income approach was the only method available

here because, it argues, the antibodies had no market value. However, we agree with the trial court's conclusion that plaintiff seeks by this argument to circumvent the rule in *Hiigel.*

Contrary to plaintiff's contention, we do not view *Cope v. Vermeer Sales & Service of Colorado, Inc.*, 650 P.2d 1307 (Colo.App.1982) as support for its position. *Cope* addresses a negligence theory and holds that when property has been rendered unusable, the proper measure of loss of such use in a business is the lost net profits. Here, however, the jury found against plaintiff on its negligence claim and thus the rule in *Hiigel* controls.

## III

Consistent with *CJI–Civ.3d* 14:19 (1989), the trial court instructed the jury that:

A product is unreasonably dangerous because of a defect in its design if it creates a risk of harm to property which either [1] would not ordinarily be expected or [2] is not outweighed by the benefits to be achieved from such design.

This instruction incorporates both the "consumer expectation" and the "risk/benefit" tests for determining whether the design defect was unreasonably dangerous. *See White v. Caterpillar, Inc.*, 867 P.2d 100 (Colo.App. 1993).

By way of cross-appeal, defendant contends that the two tests are mutually exclusive and that it was error for the court to include the consumer expectation test here. We disagree.

■ In *Ortho Pharmaceutical Corp. v. Heath*, 722 P.2d 410 (Colo.1986), our supreme court determined that it was error for the trial court not to give a "risk/benefit" instruction because the "consumer expectation" test was not suitable for a strict liability case involving prescription drugs. The supreme court in *Camacho v. Honda Motor Co.*, 741 P.2d 1240, 1246–47 (Colo.1987) interpreted *Ortho* as holding that "*exclusive* reliance upon consumer expectations is ... particularly inappropriate ... where both the unreasonableness of the danger in the design defect and the efficacy of alternative designs

in achieving a reasonable degree of safety must be defined primarily by technical, scientific information." (emphasis supplied) However, we do not read *Camacho* as precluding application of the consumer expectation test in an appropriate case.

As a result and contrary to defendant's contention, we conclude that the two tests are not mutually exclusive. Rather, a court should review each to determine if it is an appropriate standard for judging the dangerous nature of the product at issue. *See White v. Caterpillar, Inc., supra.*

 Here, plaintiff presented evidence that the freezer was defective because it could be turned off inadvertently by pressure on the power switch as slight as a broom brushing up against it. This is not the sort of technical, scientific information that would render use of the "consumer expectation" test inappropriate. Therefore, we conclude that the trial court did not err in including this test in the instruction.

### IV

Defendant also contends that the trial court erred by admitting evidence of design changes it made to the freezer's power switch after the accident. We disagree.

Generally, evidence of subsequent remedial measures cannot be introduced to prove negligence or culpable conduct. However, it can be admitted to prove the feasibility of precautionary measures, if that issue is controverted. CRE 407.

Defendant argues that it did not contest the feasibility of design changes and that, therefore, evidence of the changes should not have been admitted. However, the record reflects that defendant's position at trial was that the design change it ultimately made would have been a poor design choice based on the relative risks and benefits. In fact, one of the factors to be considered under the "risk/benefit" test is the manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility. *Ortho Pharmaceutical Corp. v. Heath, supra.*

Thus, we conclude that defendant's trial strategy placed the feasibility of a new design at issue. *See Armentrout v. FMC Corp.,* 842 P.2d 175 (Colo.1992). Therefore, evidence of defendant's use of the new design was probative of that issue and thus was properly admitted. *See White v. Caterpillar, Inc., supra; Duggan v. Board of County Commissioners,* 747 P.2d 6 (Colo.App.1987).

The judgment is affirmed.

MARQUEZ and TAUBMAN, JJ., concur.