**FORMA SCIENTIFIC, INC., Petitioner,**

v.

**BIOSERA, INC., a Colorado corporation, Respondent.**

**No. 96SC860.**

Supreme Court of Colorado,
En Banc.

June 1, 1998.

William H. ReMine, P.C., William H. Re-Mine, III, Denver, Montgomery, Little & McGrew, P.C., John R. Riley, Kevin J. Kuhn, Englewood, for Petitioner.

Holland & Hart, Harry Shulman, Marcy G. Glenn, Denver, for Respondent.

Justice MULLARKEY delivered the Opinion of the Court.

### I.

We granted certiorari in *BioSera, Inc. v. Forma Scientific, Inc.*, 941 P.2d 284 (Colo. App.1996), a strict products liability case involving an ultra-cold temperature freezer manufactured by Forma Scientific, Inc. (For-

ma), the petitioner. The respondent, Bio-Sera, Inc. (BioSera), owned a freezer manufactured by Forma which was inadvertently shut off one night. As a result, all of the medical contents stored in the freezer by BioSera were destroyed. Over Forma's objection, the trial court admitted evidence of subsequent remedial measures (design changes) made by Forma to the unguarded on/off power switch of its freezers. The court of appeals affirmed the trial court's evidentiary ruling based on its finding that the feasibility of design changes was at issue during the trial. Pursuant to Colorado Rule of Evidence 407 (CRE 407), evidence of subsequent remedial measures is generally precluded if it is introduced "to prove negligence or culpable conduct." CRE 407. That rule provides further that such evidence is admissible, however, to demonstrate the feasibility of a design change, if feasibility is at issue. Here, the court of appeals concluded that the evidence was admissible under this exception. Thus, the court of appeals implicitly assumed that CRE 407 applies to strict liability cases.

Forma sought this court's review of "[w]hether evidence of post-accident changes in the design of a product is admissible in strict liability cases, when the feasibility of the design alternative is not an issue." We now affirm the judgment of the court of appeals on different grounds and hold that CRE 407 does not apply to strict liability claims based on design defect. Because of our disposition, we need not address Forma's contention that it did not place feasibility at issue.

### II.

BioSera is a corporation located in Aurora, Colorado that sells blood products to the health industry. Ultimately, the blood products sold by BioSera, comprising HLA plasma[1] and red cell antibodies, are utilized by hospitals and blood donor banks for tissue

---

1. HLA plasma contains a white cell antigen called human leukocyte antigen. HLA plasma is     collected from human placentas.

typing[2] in bone marrow and organ transplant cross-matching as well as for transfusion crossmatching. As part of its regular business operations, BioSera collects blood plasma from donors who have rare blood types. The donors are able to donate plasma twice a week as long as the concentration of the desirable type of cells in their plasma ("titer") remains above a certain level. If the titer falls below a certain level, the donor must be immunized with "stim" cells to stimulate production of these desirable cells. Typically, the donor can start donating plasma again within one to two weeks of immunization. BioSera's blood products and donor-specific immunizations must be stored at ultra-cold temperatures.

Forma, a company located in Marietta, Ohio, manufactures and sells freezers for scientific use as well as other laboratory equipment. In November 1990, BioSera purchased an ultra-cold temperature freezer from Forma to store its products. The freezer, a 700–pound upright model, had a temperature range of –50 degrees Celsius to –86 degrees Celsius. This particular freezer was manufactured by Forma in 1990 and had an on/off power switch located on the lower back right-hand side of the unit, approximately eight inches above the floor and one inch away from the power line cord. The on/off power switch operated as a rocker switch which was not recessed or guarded. In its complaint, BioSera described the rocker switch as operable without application of any significant force.

On April 9, 1992, a janitorial service employed by BioSera inadvertently turned off the on/off power switch located at the back of the ultra-cold temperature freezer while performing cleaning services.[3] Although the unit made an audible beeping sound when the electricity was shut off, the janitorial service failed to respond to the warning signal and the unit remained off from Thursday night until the following Monday morning, April 13, 1992, when BioSera employees arrived at work. Consequently, BioSera's inventory in the freezer (HLA plasma and red blood cells for immunizations) was destroyed.

BioSera brought suit against Forma on negligence and strict liability grounds,[4] seeking damages for the cost of the blood product inventory and blood immunizations that were destroyed, $248,863.50 and $7,024.63 respectively. In addition, BioSera sought lost profits/replacement costs for the immunizations ($15,819,100).[5] BioSera alleged that Forma could have better protected the rocker switch, and indeed that Forma had changed the design of the rocker switch after BioSera purchased the freezer unit from Forma. Specifically, commencing January 1992, Forma equipped its freezers with a larger and more visible power switch. BioSera alleged that the increased visibility of the switch would render it more difficult to turn off the freezer inadvertently.

Forma moved for summary judgment on BioSera's claims for lost profits/replacement costs and subsequently filed a motion in limine to exclude evidence of subsequent remedial measures taken in the design of the power switch. The trial court dismissed BioSera's claim for lost profit/replacement costs for the donor immunizations, ruling that such damages are not recoverable in products liability cases. The trial court, however, denied Forma's motion in limine to exclude evidence that Forma used a different rocker switch on its ultra-cold temperature freezers beginning in January 1992, ruling

---

**2.** Tissue typing is usually performed prior to transplanting to identify HLA antigens and to minimize problems caused by differences between the donor and the recipient.

**3.** BioSera sued the janitorial service in a separate action. Those claims were subsequently settled.

**4.** In addition, BioSera originally raised two warranty claims in its complaint. Those claims were dismissed early in the litigation by stipulation of the parties.

**5.** According to BioSera, it takes years to identify and locate the correct immunizations for its donors because the immunizations are so donor specific. Therefore, BioSera claimed it would take an equally long time to replace the immunizations. The damages sought by BioSera represented (1) the amount of money BioSera would require to replace the immunizations, and (2) the lost profits that would ensue during the period of time when BioSera could not extract antibodies from its donors because of the lack of immunizations.

that the motion was "denied to the extent such evidence will be offered on the issue of strict liability."

Before the start of trial, which was held in April 1995, Forma orally renewed its motion in limine to have evidence of subsequent remedial measures stricken. In addition to the 1992 change, Forma had decided, approximately five to six weeks prior to trial, to add a red light to the power failure switch and was considering a recommendation by an internal engineering committee proposing to add guards (plastic wings) to protect the on/off power switch on its freezers. Evidence of the latter consisted of a memo detailing an engineering change request which noted as a "problem" that the switch could inadvertently be shut off and proposed as a "solution" that the rocker switch be protected with plastic wing guards. Thus, Forma moved to exclude the new evidence, as well as the evidence raised in its earlier written motion in limine (the original motion predated both the accepted and proposed changes made in 1995). The trial court again denied the motion based on its earlier ruling that evidence of subsequent remedial measures is admissible as to strict liability claims. After trial, the jury returned a verdict for Forma on the negligence claim and a verdict for BioSera on the strict products liability claim.

BioSera appealed the trial court's summary judgment ruling denying it damages for lost profits/replacement costs. Among the other grounds raised by it, Forma cross-appealed the trial court's ruling on the admissibility of evidence of subsequent remedial measures. The court of appeals affirmed the trial court in all respects. We accepted certiorari review to consider only the evidentiary issue, i.e., whether CRE 407 applies to strict liability claims premised on a design defect theory.

## III.

### A.

The court of appeals considered only briefly the admissibility of the subsequent remedial measures taken by Forma. First, citing CRE 407, the court of appeals noted that:

Generally, evidence of subsequent remedial measures cannot be introduced to prove negligence or culpable conduct. However, it can be admitted to prove the feasibility of precautionary measures, if that issue is contraverted.

*BioSera,* 941 P.2d at 287. Next, the court of appeals noted that, although Forma argued that it did not contest the feasibility of design changes, "the record reflect[ed] that defendant's position at trial was that the design change it ultimately made would have been a poor design choice based on the relative risks and benefits."[6] *Id.* The trial court, however, did not consider feasibility when it issued its ruling on the motion in limine on strict liability grounds only.[7] Nevertheless, because "one of the factors to be considered under the 'risk/benefit' test is the manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility," the court of appeals concluded that Forma's trial strategy raised feasibility as an issue. *Id.* (citing *Ortho Pharm. Corp. v. Heath,* 722 P.2d 410 (Colo. 1986)). Thus, the court of appeals sanctioned the admission of the evidence because it was probative as to the feasibility of an alternative design.

Hence, the court of appeals did not address directly the issue with which we are

---

**6.** Forma contended that the decision not to guard the switch was based on the countervailing consideration that a less visible switch would increase the risk that service personnel might neglect to turn the unit off prior to unplugging it. Unplugging the unit before it was shut off might cause electrical arcing which could result in electrocution.

**7.** The trial court order provided in relevant part as follows:

Forma's Motion in Limine Regarding Subsequent Remedial Measures is denied to the extent such evidence will be offered on the issue of strict liability.

Thus, although the trial court and the court of appeals reached the same result, the two courts used different analyses. The trial court held that CRE 407 does not apply to strict liability claims. The court of appeals held that CRE 407 generally does apply to such claims, but the feasibility exception allowed the admission of evidence in this case.

presently confronted. The court of appeals' decision, to allow the evidence under the feasibility exception, however, implicitly assumed that CRE 407 applies to products liability cases which sound in strict liability instead of negligence.

### B.

The Colorado Rules of Evidence were adopted by this court on October 23, 1979, and became effective January 1, 1980. For the most part, the evidentiary rules were patterned directly on the federal evidentiary rules which were approved by the United States Supreme Court and enacted into statute by Congress in 1975. The Colorado rules were drafted and proposed to the court by a select committee of the Colorado Bar Association (Colorado Committee). As part of our review process, we held three public hearings before ultimately adopting the proposed rules.

When the Colorado Rules of Evidence were first approved, CRE 407 was identical to its federal counterpart, Rule 407 of the Federal Rules of Evidence (Rule 407). CRE 407 provides as follows:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent remedial measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if contraverted, or impeachment.

The Colorado Committee supplemented CRE 407 with this explanatory comment (Colorado Committee Comment):

> The phrase "culpable conduct" is not deemed to include proof of liability in a

"strict liability" case based on defect, where the subsequent measures are properly admitted as evidence of the original defect. But see § 13–21–404, C.R.S. (1978 Supp.).[8]

The Colorado Committee Comment is not patterned on a comment following CRE 407's federal counterpart. Although the advisory committee that drafted the federal evidentiary rules did provide an explanatory comment to Rule 407 (Advisory Committee Note), it did not address the strict liability issue. Instead, the Advisory Committee Note explained the historic rationale for the exclusion of subsequent remedial measures:

> The rule rests on two grounds. (1) The conduct is not in fact an admission, since the conduct is equally consistent with injury by mere accident or through contributory negligence.... [T]he rule rejects the notion that "because the world gets wiser as it gets older, therefore it was foolish before." ... (2) The other, and more impressive, ground for exclusion rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety.

Recently, the federal rule has been changed to cover strict liability claims specifically. The newly amended language of Rule 407 now provides that:

> When, after an *injury or harm allegedly caused by an* event, measures are taken [which] *that*, if taken previously, would have made the [event] *injury or harm* less likely to occur, evidence of the subsequent remedial measures is not admissible to prove negligence [or], culpable conduct, *a defect in a product, a defect in a product's design, or a need for a warning or instruction* [in connection with the event]. This rule does not require the exclusion of evi-

---

**8.** Section 13–21–404 pertains to the general inadmissibility of evidence of scientific advancements garnered after the manufacture of the allegedly defective product in question. That section provides that:

> In any product liability action, evidence of any scientific advancements in technical or other knowledge or techniques, or in design theory or philosophy, or in manufacturing or testing

knowledge, techniques, or processes, or in labeling, warnings of risks or hazards, or instructions for the use of such product, where such advancements were discovered subsequent to the time the product in issue was sold by the manufacturer, shall not be admissible for any purpose other than to show a duty to warn.

§ 13–21–404, 5 C.R.S. (1997).

dence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if contraverted, or impeachment. .

(Deleted words are indicated by brackets and new language is underlined.) The Advisory Committee Note following the revised federal rule explains that, among the other amendments made to the rule,

> Rule 407 has been amended to provide that evidence of subsequent remedial measures may not be used to prove "a defect in a product or its design, or that a warning or instruction should have accompanied a product." This amendment adopts the view of a majority of the circuits that have interpreted Rule 407 to apply to products liability actions.

Thus, the Colorado Committee's interpretation of CRE 407, as reflected in its comment, is directly in opposition to the newly amended Rule 407.

## C.

The issue presently before us has been treated extensively by both state and federal courts and the authorities have divided, to some extent, along those lines. As discussed in more detail below, many state courts have concluded that their versions of Rule 407 do not apply to strict liability claims.[9] In contrast, the federal circuit courts of appeal, with two exceptions (the Eighth and Tenth Circuits), had ruled that the original Rule 407 applied to strict liability claims, a view which was adopted by the United States Supreme Court and is now reflected directly in the text of the federal rule.

One of the first courts to address this issue was the California Supreme Court. In a landmark decision, the California Supreme Court held that California's analog to Rule 407 of the Federal Rules of Evidence does not apply to strict liability actions. *See Ault v. International Harvester Co.*, 13 Cal.3d 113, 117 Cal.Rptr. 812, 528 P.2d 1148 (1974).[10] In *Ault*, the court found that the use of the term "culpable conduct" in the applicable provision was not broad enough to encompass strict liability actions and that the public policy rationale for the exclusion of subsequent remedial measures did not apply to products liability cases. Instead, the court found it

> manifestly unrealistic to suggest that [a manufacturer of tens of thousands of units of goods] will forego making improvements in its product, and risk innumerable additional lawsuits and the attendant adverse effect upon its public image, simply because evidence of adoption of such improvements may be admitted in an action founded on strict liability for recovery on an injury that preceded the improvement.

*Id.,* 117 Cal.Rptr. 812, 528 P.2d at 1152. The California Supreme Court reasoned that the rationale for exclusion of subsequent remedial measures applied to classic negligence cases, such as a slip-and-fall tort case, where the potential defendant may have been deterred from taking remedial measures because of the fear that evidence of such measures would be used adversely in that particular lawsuit. *See id.,* 117 Cal. Rptr. 812, 528 P.2d at 1151. Thus, the court refused to "gratuitously extend[ ]" that historical logic to strict liability actions because an exclusionary rule would not affect the "primary conduct" of a modern mass producer of goods. *Id.*, 117 Cal.Rptr. 812, 528 P.2d at 1152.

The effect of the California Supreme Court's decision in *Ault* was to define the parameters for subsequent cases addressing this issue. Thus, the debate revolves around two points specifically raised in that decision:

---

9. Indeed, some states have statutory schemes that explicitly allow evidence of subsequent remedial measures in strict liability cases. *See* Alaska R. Evid. 407; Haw. R. Evid. 407; Tex R. Civ. Evid. 407(a); Me. R. Evid. 407. In contrast, Nebraska's counterpart to Rule 407 specifically defines "culpable conduct" to "include, but not be limited to, the manufacture or sale of a defective product." Neb.Rev.Stat. § 27–407 (1997).

10. Although *Ault* was decided one year prior to the adoption of the Federal Rules of Evidence, the California courts have continued to adhere to the reasoning expressed in that case despite the fact that the majority of federal circuits have ruled otherwise. *See Schelbauer v. Butler Mfg. Co.*, 35 Cal.3d 442, 198 Cal.Rptr. 155, 673 P.2d 743 (1984).

(1) the significance of the term "culpable conduct" and whether it encompasses strict liability claims; and (2) the historic rationale underlying the subsequent remedial measures rule and its applicability to strict liability claims.

Many other state courts have followed California's lead and interpreted their versions of Rule 407 as not encompassing strict liability claims. *See, e.g., McFarland v. Bruno Mach. Corp.*, 68 Ohio St.3d 305, 626 N.E.2d 659, 661 (1994) (following reasoning in *Ault* and concluding that Ohio's version of Rule 407 "[b]y its very terms ... excludes evidence of subsequent remedial measures only when 'negligence' or 'culpable conduct' is alleged") (footnote omitted); *D.L. by Friederichs v. Huebner*, 110 Wis.2d 581, 329 N.W.2d 890, 903 (1983) (reaffirming its earlier holding that Wisconsin's version of Rule 407 does not apply to strict liability cases even when both negligence and strict liability claims are raised). *But see Hyjek v. Anthony Indus.*, 133 Wash.2d 414, 944 P.2d 1036, 1041 (1997) (holding in accord with the newly amended Rule 407 and basing decision on conclusion that "failing to apply the exclusionary rule in strict liability actions will have the same deterrent affect on subsequent remedial measures as in a negligence case").

As noted above, prior to the clarifying amendment, the majority of federal circuit courts of appeal had ruled contrary to *Ault*, finding that Rule 407 applied to strict liability cases just as it applied to negligence cases. The reasoning expressed in those cases, as discussed below, took the view that the two-pronged rationale, set forth in the Advisory Committee Note to Rule 407, is equally persuasive in both strict liability and negligence cases. *See supra* p. 11 for the text of the Advisory Committee Note following Rule 407 before it was amended.

For example, the Seventh Circuit explained in *Flaminio v. Honda Motor Co.*, 733 F.2d 463 (7th Cir.1984), that despite the different emphasis between negligence and strict liability cases (the former focuses on the defendant's conduct and the latter on the dangerousness of the product irrespective of conduct), the rationale to not provide a disincentive to repair is applicable in both kinds of cases:

> In those cases where the defendant would have no incentive to take remedial measures anyway, because the accident was unavoidable, Rule 407 is academic; there will be, by assumption, no subsequent remedial measures. But in other cases, as should be apparent from our earlier remarks on the meaning of strict liability in products cases, the injurer would be held liable on a theory of strict liability even though the accident could have been avoided at reasonable cost by taking more care. Especially in a product case, the accident may have been readily avoidable either by eliminating some defect or by warning the consumer of some inherent danger, and in such a case the failure to apply Rule 407 might deter subsequent remedial measures just as much as in a negligence case. This is more than conjecture; the premise of [the plaintiff's] offer of proof was that the accident was caused by a defect that could be and was later eliminated by a minor change in the design of the [product]. The policy of Rule 407 is applicable.

*Flaminio*, 733 F.2d at 470 (citation omitted). *See also Gauthier v. AMF, Inc.*, 788 F.2d 634, 637 (9th Cir.) (stating that "there is no practical difference between strict liability and negligence in defective design cases and the public policy rationale to encourage remedial measures remains the same" and that "it is precisely the large manufacturers who are defendants in many product liability suits who are most likely to know about Rule 407 and be affected by the decision whether to apply it"), *amended*, 805 F.2d 337 (9th Cir. 1986); *Grenada Steel Indus. v. Alabama Oxygen Co.*, 695 F.2d 883, 888 (5th Cir.1983) (basing decision on irrelevance of evidence and noting that "[t]he introduction of evidence about subsequent remedial changes in the product or its design threatens to confuse the jury by diverting its attention from whether the product was defective at the relevant time to what was done later"); *Werner v. Upjohn Co.*, 628 F.2d 848, 857 (4th Cir.1980) (basing decision on conclusion that the manufacturer's inclination to make subsequent improvements will be repressed re-

gardless if the complaint is based on negligence or strict liability).

Two circuits, the Eighth[11] and the Tenth,[12] however, did not adhere to the views of the majority of the federal circuits prior to the amendments to Rule 407. Instead, the Eighth and the Tenth Circuits followed the reasoning expressed in *Ault. See Burke v. Deere & Co.*, 6 F.3d 497, 506 (8th Cir.1993); *Huffman v. Caterpillar Tractor Co.*, 908 F.2d 1470, 1480–81 (10th Cir.1990); *Donahue v. Phillips Petroleum Co.*, 866 F.2d 1008, 1013 (8th Cir.1989); *Meller v. Heil Co.*, 745 F.2d 1297 (10th Cir.1984); *Herndon v. Seven Bar Flying Serv., Inc.*, 716 F.2d 1322 (10th Cir. 1983); *Unterburger v. Snow Co.*, 630 F.2d 599, 603 (8th Cir.1980). These decisions have now been superseded by the amendments to Rule 407.

### D.

■ We agree with the reasoning expressed in *Ault* as well as in pre-amendment decisions of the Eighth and Tenth Circuits. We decline to follow the newly amended Rule 407 which is now in direct opposition to our reading of CRE 407 and the Colorado Committee Comment following that rule.

■ The explicit language of CRE 407—that "evidence of the subsequent measures is not admissible to prove negligence or culpable conduct"—does not permit the exclusion of evidence of remedial actions in strict liability claims premised on design defect. This is true because the manufacturer's conduct, whether culpable or negligent, is not germane in a strict liability action. *See Camacho v. Honda Motor Co.*, 741 P.2d 1240, 1246 n. 7 (Colo.1987) ("[I]n accordance with one of the underlying goals of strict liability of easing the burden of proof for a plaintiff injured by a defective product, the plaintiff is relieved of the requirement of proving the manufacturer's negligence."). What is germane in such a case is the nature of the manufactured product itself. *See id.* at 1246. ("The primary focus must remain upon the nature of the product under all relevant circumstances rather than upon the conduct of either the consumer or the manufacturer."). Thus, any attempt to stretch the meaning of "culpable conduct"[13] or negligence to include design defect products liability claims would be disingenuous at best.

Next, we agree with *Ault* and its progeny that the public policy rationale underlying CRE 407—not to discourage entities from taking safety precautions—is largely inapplicable in the context of today's mass manufacturers. It is unreasonable to presume that a

11. For purposes of Rule 407, the Eighth Circuit distinguished between products liability cases based on design defect and those based on failure to warn. *Compare Burke v. Deere & Co.*, 6 F.3d 497, 506 (8th Cir.1993) (permitting evidence of subsequent remedial measures in a design defect case) *with DeLuryea v. Winthrop Labs.*, 697 F.2d 222, 228–29 (8th Cir.1983) (excluding evidence of subsequent remedial measures in a failure to warn case).

12. Although it is tangential to our analysis here, we note the Tenth Circuit has ruled that, in diversity cases, the appropriate state's version of Rule 407 should be applied in determining whether to admit evidence of subsequent remedial measures. *See Moe v. Avions Marcel Dassault–Breguet Aviation*, 727 F.2d 917, 932 (10th Cir. 1984) ("It is our view that when state courts have interpreted Rule 407 or its equivalent state counterpart, the question whether subsequent remedial measures are excluded from evidence is a matter of state policy."). Again, the Tenth's Circuit's position is in the minority. The majority position of the federal circuits is that, under the doctrine announced in *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938),

Rule 407 is a procedural rather than substantive rule and thus applicable in diversity cases. *See Kelly v. Crown Equip. Co.*, 970 F.2d 1273, 1278 (3d Cir.1992); *McInnis v. A.M.F., Inc.*, 765 F.2d 240, 244–46 (1st Cir.1985). The United States Supreme Court to date has not reviewed this particular issue. According to its reasoning in *Moe*, the Tenth Circuit would apply CRE 407 in diversity cases under Colorado law, as interpreted by this court here, rather than the now substantively different Rule 407.

13. "Culpable conduct" is defined in Black's Law Dictionary as the following:

Blamable; censurable; criminal; at fault; involving the breach of a legal duty or the commission of a fault. That which is deserving of moral blame.

Such conduct normally involves something more than simple negligence and implies conduct which is blamable, censurable, involving the breach of a legal duty or the commission of a fault. It implies that the act or conduct spoken of is reprehensible or wrong, but not that it involves malice or a guilty purpose. *Black's Law Dictionary* 379 (6th ed.1990).

mass manufacturer of goods takes its cue from evidentiary rules rather than considerations of consumer safety and/or the safety of consumer property. Even taking a less rosy view, recognizing that not all manufacturers necessarily place the best interests of their consumers at the forefront, market forces generally operate to compel manufacturers to improve their products. This is amply demonstrated by the actions taken here by Forma to protect its consumers' property interests by lessening the risk of inadvertent shut offs of its ultra-cold temperature freezers.

For several reasons, it would be difficult to imagine that Forma's actions—to improve the design of its freezers—were guided by the notion that these changes would not be admissible at trial to prove the defectiveness of an earlier product. First, even assuming that Forma was aware of CRE 407 (most likely an unrealistic assumption), this court has never issued a definitive pronouncement on the application of that rule to strict products liability cases. Second, if Forma were aware of the rule, it also would be aware of the comment following the rule. Finally, Forma's conduct in this case rejects the notion that the evidentiary rule drives the manufacturer's decision to adopt remedial measures. Specifically, Forma took *additional* measures to protect more adequately the on/off power switch after the trial court issued its first ruling on the motion in limine permitting the admission of evidence of subsequent remedial measures. Clearly, Forma was not deterred from making changes even though Forma already knew the trial court's position that such evidence would be admissible in this case. Thus, we cannot conclude that Forma's actions were guided by any misplaced reliance on CRE 407.

### E.

Our interpretation of CRE 407 is reinforced by the Colorado Committee Comment

which follows that rule. The Colorado Rules of Evidence were adopted under this court's rule-making powers articulated in the Colorado Constitution. *See* Colo. Const. art. VI, § 21 (providing that "[t]he supreme court shall make and promulgate rules governing the administration of all courts and shall make and promulgate rules governing practice and procedure in civil and criminal cases"). This prerogative includes the right to adopt procedural rules of evidence. *See Page v. Clark,* 197 Colo. 306, 318, 592 P.2d 792, 800 (1979)). Because the evidentiary rules did not undergo scrutiny by the General Assembly, the comment to CRE 407 is not legislative history.[14]

Nevertheless, we have looked to the Colorado Committee Comments following evidentiary rules for guidance in interpreting those rules. *See, e.g., People v. Czemerynski,* 786 P.2d 1100, 1107 (Colo.1990) (looking to the comment following CRE 803(1) to provide further guidance on the admissibility of spontaneous or present sense impressions exceptions to the hearsay rule and to distinguish the Colorado rule from the federal rule—the Colorado rule being more restrictive on the contemporaneous requirement); *People v. Collins,* 730 P.2d 293, 305 (Colo.1986) (looking to the comment following CRE 704 to analyze the permissibility of a lay witness testifying as to an ultimate issue of fact).

Thus, while a comment cannot override the plain meaning of a rule, we regard the comments following our evidentiary rules as authoritative sources on the meaning and application of those rules. Indeed, the comment following CRE 407 is consistent with Colorado cases preceding the inception of CRE 407. *See Roberts v. May,* 41 Colo.App. 82, 87, 583 P.2d 305, 309 (1978) (holding the principle that subsequent remedial measures

---

**14.** In *Meller v. The Heil Co.,* 745 F.2d 1297 (10th Cir.1984), the Tenth Circuit discussed the significance of the Colorado Committee Comment following CRE 407:

> Following the two earlier Colorado court decisions in *Roberts v. May,* 41 Colo.App. 82, 583 P.2d 305 (1978),and *Good v. A.B. Chance Co.,* 39 Colo.App. 70, 565 P.2d 217 (1977), the Colorado legislature chose to make Rule 407

> inapplicable to products liability cases. The Comment establishes that the legislature contemplated the admission of some kinds of subsequent remedial measures in products liability cases, the exception being the limitation set out in section 13–21–404.

745 F.2d at 1302. The Tenth Circuit mistakenly assumed that the Colorado Rules of Evidence were promulgated by our legislature.

are not admissible applies only in negligence cases because "where an action is based on an alleged design defect, one important question is the existence of feasible alternatives"); *Good v. A.B. Chance Co.,* 39 Colo.App. 70, 79, 565 P.2d 217, 224 (1977) (holding in accord with the analysis in *Ault* and stating that "evidence of post-accident warnings had a direct bearing on the [strict products] liability issue").[15]

Our reliance on the comment following CRE 407 to clarify that rule is supported by the status accorded by federal courts to the Advisory Committee Notes following the federal evidentiary rules. *See Williamson v. United States,* 512 U.S. 594, 614–15, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994) (Kennedy, J., concurring in the judgment) (when the "text of a Rule of Evidence does not answer a question that must be answered in order to apply the Rule, and when the Advisory Committee's Note does answer the question, our practice indicates that we should pay attention to the Advisory Committee's Note"). The Supreme Court has looked often to the Advisory Committee Notes for guidance and clarification on the federal evidentiary rules. *See, e.g., Huddleston v. United States,* 485 U.S. 681, 688, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988); *United States v. Owens,* 484 U.S. 554, 562, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988); *Bourjaily v. United States,* 483 U.S. 171, 179 n. 2, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); *United States v. Abel,* 469 U.S. 45, 51, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). Although the federal rules of evidence, unlike the Colorado rules, are legislatively enacted, the comments following both sets of rules are equally authoritative.

## F.

We note that that we have previously considered the applicability of CRE 407 in a products liability case based on failure to warn in which the plaintiff contested the trial court's decision to exclude evidence of an alleged subsequent remedial measure. *See*

*Uptain v. Huntington Lab, Inc.,* 723 P.2d 1322 (Colo.1986). In *Uptain,* the plaintiff was employed in the housekeeping division of a hospital and regularly used Sani–Tate, a cleaning compound for cleaning bathroom fixtures. Although the Sani–Tate container warned users to avoid skin contact with the product because of potential chemical burns and also instructed users to wash exposed areas immediately, the plaintiff used the product without wearing protective gloves. As a result, she suffered chemical burns. Subsequently, the manufacturer revised its label to advise consumers to use rubber gloves. The plaintiff argued that the revised warning was admissible under CRE 407. In considering her argument, we reviewed the split in federal and state authority:

> Many decisions holding [Rule] 407 inapplicable to products liability cases simply conclude that products liability cases can never be equated to "fault" cases. This approach ignores the reality that the concepts of strict liability and negligence liability are often intertwined in duty to warn cases.

*Uptain,* 723 P.2d at 1327.

We then relied on an Eighth Circuit Court of Appeals case that drew a distinction—for purposes of the application of Rule 407—between products liability cases premised on failure to warn and other products liability cases. *See DeLuryea v. Winthrop Labs.,* 697 F.2d 222 (8th Cir.1983). The *DeLuryea* court applied Rule 407 to a failure to warn case, distinguishing it from other strict liability cases because claims based on failure to warn "involve primarily a question of whether the manufacturer conducted itself reasonably in communicating arguably known information about risks associated with the product." *Uptain,* 723 P.2d at 1328. Thus, we opined:

> The *DeLuryea* distinction applies to the circumstances of this case. Sani–Tate can be deemed defective only if the warnings

---

**15.** The court of appeals' holding in *Good* was cast into doubt by dicta in *Uptain v. Huntington Lab, Inc.,* 723 P.2d 1322 (Colo.1986), in which this court suggested that evidence of subsequent remedial measures in a products liability case based on a failure to warn theory may be admissible because duty to warn cases frequently raise issues of negligence. *See Uptain,* 723 P.2d at 1327; *see also* discussion of *Uptain, infra* p. 117. The present opinion resolves that doubt in favor of the continuing vitality of *Good.*

were not adequate. The test of adequacy includes a comparison of the conduct of the defendant to the conduct of a hypothetical "reasonable" entity in the defendant's position at the time. Because this claim requires proof that the defendant's conduct fell short of some objectively ascertainable minimal standard, any liability will be based on "fault" in the traditional tort sense of failure to exercise reasonable care in circumstances wherein one has a duty to exercise reasonable care. We thus conclude that, in the circumstances of this case, CRE 407 is applicable.

*Id.*

After exhausting this discussion, however, we found that the evidence at issue did not constitute a subsequent remedial measure because the revised warning was submitted to the Environmental Protection Agency one year prior to the plaintiff's accident. *Id.* Thus, we reasoned that CRE 407 was not applicable because it concerned only "measures taken 'after an event.'" *Id.* (quoting CRE 407). Although we theorized at length about the applicability of CRE 407 to strict liability cases premised on failure to warn, we did not ultimately reach that issue in *Uptain.*

Here, we are presented with a products liability case premised on design defect rather than failure to warn. Thus, while we conclude that the Colorado Committee Comment applies to design defect cases, we leave for another day the question whether the comment also applies to strict products liability cases premised on a failure to warn theory. Nevertheless, we note that our holding here follows logically from the *Uptain* dicta. Specifically, strict liability cases based on design defect theories do not entail considerations of "fault" in the traditional tort sense as do strict liability cases grounded in failure to warn claims.

### IV.

◼ While we conclude that CRE 407 does not apply to products liability cases premised on design defect, evidence of subsequent remedial measures must nevertheless pass muster under the general relevancy and balancing tests of CRE 401 and 403 and must be probative of the claimed defect. *See* CRE 407, Colorado Committee Comment (stating that although culpable conduct does not include strict liability cases, the "subsequent measure must properly [be] admitted as evidence of the original defect").

Pursuant to CRE 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The relevancy of evidence, however, must be balanced against its unfair prejudicial impact. Thus, CRE 403 provides that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

◼ We deem that the evidence of subsequent remedial measures taken by Forma to the design of the on/off rocker switch relevant and probative as to the design of the freezer at the time the incident at issue here took place. Furthermore, the relevancy and probative value of that evidence amply outweighs any unfair prejudice caused to Forma by virtue of its admission. This analysis was implicit in the trial court's ruling to admit the evidence and is supported by the record. We will not disturb the trial court's evidentiary ruling on appeal absent an abuse of discretion. *See Uptain,* 723 P.2d at 1329 ("[T]rial courts have broad discretion as to the admissibility of evidence.").

### V.

For the reasons discussed above, we affirm on different grounds the judgment of the court of appeals and hold that CRE 407 does not apply to strict liability claims premised on a design defect theory.

VOLLACK, C.J., dissents.

KOURLIS, J., does not participate.

Chief Justice VOLLACK dissenting.

I disagree with the majority's holding that CRE 407 does not exclude evidence of subsequent remedial measures in design defect cases premised on strict liability. In my view, the policies underlying CRE 407 apply with equal force in such cases. In addition, I believe petitioner Forma Scientific, Inc. (Forma), did not contest the feasibility of pre-accident design changes. Therefore, I would conclude that evidence of such changes is prohibited by CRE 407.

## I.

Respondent BioSera, Inc. (BioSera), collects and sells two major types of human blood products: white and red blood cell antibodies. Because some of these red cell antibodies are rare, BioSera stimulates their production by injecting donors with immunizations known as "stim cells." These cells must be stored at minus sixty-five degrees Celsius or colder. To accomplish this, BioSera purchased a used ultracold freezer manufactured by Forma. The freezer was equipped with an unguarded rocker-type power switch on the back of the freezer.[1]

On the evening of April 9, 1992, a janitorial service was cleaning in BioSera's lab when one of the workers inadvertently tripped the power switch and shut off the freezer. Although a beeping sound and flashing yellow light signaled that the freezer had been turned off, no BioSera employees were in the lab to respond to the alarm. This incident occurred on a Thursday evening before a long weekend. When BioSera employees returned on Monday morning, they discovered that the cells in the freezer had thawed and were ruined.

BioSera filed a products liability suit against Forma in Denver District Court (trial court), alleging negligence and strict liability. Prior to trial, Forma filed a motion *in li-mine*, seeking to exclude evidence of post-accident design changes to the power switch. The trial court denied the motion, ruling that such evidence was admissible with regard to BioSera's strict liability claim. At trial, one of BioSera's experts testified that Forma had recently changed the design of the power switch. When asked to comment on the change, the expert explained that Forma had recognized a problem with the switch and had taken steps to reduce the hazard of inadvertent deactivation. Counsel for BioSera reiterated during cross-examination that Forma implemented a new switch design after BioSera's products had been destroyed and that the ultracold freezers were currently being sold with guarded power switches.

The jury rejected the negligence claim but found Forma liable under the theory of strict liability.[2] Both parties appealed, and the court of appeals affirmed. Regarding the evidence of subsequent design changes, the court of appeals held that such evidence was admissible under CRE 407 because Forma had contested the feasibility of an alternative design.

## II.

### A.

CRE 407 governs the admissibility of subsequent remedial measures:

When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, *evidence of the subsequent measures is not admissible to prove negligence or culpable conduct* in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

---

1. BioSera purchased the freezer for $3,800. At the time of the purchase, Forma offered several accessories to protect the contents of the freezer in case of a power failure. The accessories included a liquid carbon dioxide backup system and a remote alarm system with telephone dialing capabilities, each costing less than $1,000. BioSera declined to purchase either accessory.

2. Pursuant to Colorado's comparative fault statute, section 13–21–406, 5 C.R.S. (1997), the jury found Forma responsible for 60% and BioSera responsible for 40% of the total property loss, which the trial court determined to be $249,198.

(Emphasis added.) There are two policies underlying CRE 407 and its federal counterpart, Fed.R.Evid. 407 (Rule 407):[3] (1) excluding evidence that does not show negligence or culpable conduct yet is likely to be misused as such, and (2) encouraging potential defendants to take post-accident corrective measures without fear that such measures will be used against them in court. *See* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 407.03 (Joseph M. McLaughlin ed., 1998); *see also Uptain v. Huntington Lab, Inc.,* 723 P.2d 1322, 1327 (Colo.1986).

Based on these policies, the vast majority of the federal circuits have recognized that Rule 407 excludes evidence of subsequent remedial measures in strict liability cases. *See Raymond v. Raymond Corp.,* 938 F.2d 1518, 1522–23 (1st Cir.1991); *Cann v. Ford Motor Co.,* 658 F.2d 54, 60 (2d Cir.1981); *Kelly v. Crown Equip. Co.,* 970 F.2d 1273, 1276 (3d Cir.1992); *Werner v. Upjohn Co.,* 628 F.2d 848, 858 (4th Cir.1980); *Grenada Steel Indus., Inc., v. Alabama Oxygen Co.,* 695 F.2d 883, 888 (5th Cir.1983); *Hall v. American S.S. Co.,* 688 F.2d 1062, 1066–67 (6th Cir.1982); *Flaminio v. Honda Motor Co.,* 733 F.2d 463, 468–72 (7th Cir.1984); *DeLuryea v. Winthrop Laboratories,* 697 F.2d 222, 229 (8th Cir.1983) (applying Rule 407 in a strict liability case involving a failure to warn); *Gauthier v. AMF, Inc.,* 788 F.2d 634, 636–37 (9th Cir.1986); *Wood v. Morbark Indus., Inc.,* 70 F.3d 1201, 1206–07 (11th Cir. 1995).

By contrast, only the Tenth Circuit has consistently held that Rule 407 does not apply in cases involving strict liability. *See*

*Herndon v. Seven Bar Flying Serv., Inc.,* 716 F.2d 1322, 1326, 1331–32 (10th Cir.1983).[4] In line with the Tenth Circuit, the committee comment to CRE 407 (Colorado Committee Comment) indicates that Colorado's rule does not apply to strict liability cases involving a defective product. *See* CRE 407, committee cmt.[5] However, the United States Supreme Court rejected this approach in the federal courts when it recently revised Rule 407. As revised, Rule 407 expressly excludes evidence of subsequent repairs in strict products liability cases involving a design defect:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, *evidence of the subsequent measures is not admissible to prove* negligence, culpable conduct, *a defect in a product, a defect in a product's design,* or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

(Emphasis added.)[6]

Contrary to the clear weight of authority in the federal courts, the majority holds that evidence of subsequent repairs should not be excluded in strict products liability cases based on design defect.[7] I disagree. In my view, both policies underlying CRE 407 are furthered by applying the rule in such cases.

First, CRE 407 excludes evidence of subsequent repairs because such evidence may

---

**3.** Prior to its recent revision, Rule 407 was identical to CRE 407.

**4.** However, the Tenth Circuit has ruled that in federal diversity cases, the admission of subsequent repairs evidence is governed by CRE 407, as interpreted by this court. *See Moe v. Avions Marcel Dassault–Breguet Aviation,* 727 F.2d 917, 932 (10th Cir.1984).

**5.** The Colorado Committee Comment provides as follows: "The phrase 'culpable conduct' is not deemed to include proof of liability in a 'strict liability' case based on defect, where the subsequent measures are properly admitted as evidence of the original defect."

**6.** The revisions to Rule 407 were adopted by the United States Supreme Court and approved by Congress. *See* Marcie J. Freeman, Comment, *Spanning the Spectrum: Proposed Amendments to Federal Rule of Evidence 407,* 28 Tex. Tech L.Rev. 1175, 1176 (1997).

**7.** Instead of following the established federal rule, the majority relies on the Colorado Committee Comment and the position taken by the Supreme Court of California in *Ault v. International Harvester Co.,* 13 Cal.3d 113, 117 Cal.Rptr. 812, 528 P.2d 1148 (1974). However, the Colorado Committee Comment has not been approved by our General Assembly, and *Ault* predates the enactment of the Federal Rules of Evidence. *See Grenada Steel,* 695 F.2d at 886.

be unreliable and confusing to the jury. In a negligence case, for example, a jury might wrongly assume that a defendant undertook post-accident repairs to compensate for past negligence. However, such repairs might just as well have been additional safety measures implemented by a defendant who was thoroughly careful. Thus, post-accident repairs do not aid in establishing whether a defendant behaved negligently or exercised proper care. For this reason, CRE 407 recognizes that post-accident repairs do not constitute an admission of liability.

This principle applies with equal force in strict products liability cases involving a design defect. In such cases, the central question is whether a manufacturer's product contained an unreasonably dangerous defect. *See Grenada Steel,* 695 F.2d at 888. However, post-accident changes to a product do not necessarily indicate that the product contained such a defect. Manufacturers may redesign their products for reasons wholly unrelated to dangerous defects: they may be responding to increased competition in the marketplace, implementing new technology, or making an already safe product even safer. *See Grenada Steel,* 695 F.2d at 887–88. Nevertheless, a jury might improperly view design changes as an admission of error by the manufacturer. This is precisely the kind of prejudice that CRE 407 is designed to prevent.

Second, CRE 407 excludes evidence of subsequent repairs to promote the safety of persons and property. This policy flows from the belief that potential defendants will be discouraged from making repairs if they fear the injured party will use such evidence advantageously at trial. *See* 2 Wigmore, *Ev-idence* § 283(4) (Chadbourne rev.1979). In my view, this policy should be given effect regardless of whether a lawsuit happens to be pled in negligence or strict liability.[8] In either case, evidence of subsequent repairs has the same effect: it reduces the defendant's incentive to perform repairs that would prevent similar injuries from occurring in the future. *See Flaminio,* 733 F.2d at 469 (observing that Rule 407's policy of promoting repairs "is not fundamentally affected by whether the basis of liability is the defendant's negligence or his product's defectiveness"); *Gauthier,* 788 F.2d at 637 ("[T]here is no practical difference between strict liability and negligence in defective design cases and the public policy rationale to encourage remedial measures remains the same.").

Nevertheless, the majority concludes that CRE 407 does not apply in strict liability design defect cases because the rule excludes only evidence of "negligence or culpable conduct." *See* maj. op at 115. The majority reasons that in such actions, the manufacturer's conduct is not relevant because the focus is on the product and whether it contains a defect. However, this distinction is often artificial. We have recognized that instead of focusing solely on the nature of the product, such cases frequently turn on whether the manufacturer of the product is at "fault." *See Uptain,* 723 P.2d at 1327–28.[9] Thus, strict products liability cases may require a determination of whether a manufacturer engaged in "culpable conduct."

In design defect cases, for example, the key issue is whether the product was sold "in a defective condition unreasonably dangerous." Restatement (Second) of Torts,

---

8. The majority contends that the policy does not hold water in the context of modern products liability cases: "It is unreasonable to presume that a mass manufacturer of goods takes its cue from evidentiary rules rather than considerations of consumer safety...." Maj. op. at 115–116. I disagree. Of all potential defendants, mass manufacturers are the most likely to know about rules such as CRE 407 and be affected by them. *See Gauthier,* 788 F.2d at 637; *Flaminio,* 733 F.2d at 470. Furthermore, the majority's argument fails to acknowledge that CRE 407 clearly applies in negligence cases involving mass manufacturers. Thus, I see no basis for rejecting CRE 407 in strict liability cases on the grounds that such cases may involve mass manufacturers.

9. In *Uptain,* the plaintiff brought a strict liability claim, alleging that a bottle of cleaning solution was defective because its warning label was inadequate. In those circumstances, we concluded that CRE 407 was applicable because "the concepts of strict liability and negligence liability are often intertwined in failure to warn cases." *Uptain,* 723 P.2d at 1327. However, we ultimately decided that evidence of subsequent remedial measures was admissible in *Uptain* for other reasons. *See id.* at 1328–29.

§ 402A(1) (1965); *see also Barton v. Adams Rental, Inc.*, 938 P.2d 532, 536 (Colo.1997). As the Seventh Circuit noted, this test involves more than an examination of the product in isolation; it ultimately requires an investigation of the manufacturer's behavior that caused the defect:

> There is liability only if a product is defective or unreasonably dangerous, and the concepts of "defect" and "unreasonableness" bring into play factors of cost and risk similar to those that determine negligence.... In defining unreasonably dangerous, a balancing test is mandated: if the likelihood and gravity of harm outweigh the benefits and utility of the product, the product is unreasonably dangerous. A similar balancing test is used in negligence cases.

*Flaminio*, 733 F.2d at 467 (citations and quotation marks omitted); *see also Birchfield v. International Harvester Co.*, 726 F.2d 1131, 1139 (6th Cir.1984) ("[I]n a defective design case .... [t]he test for an 'unreasonably dangerous' condition is equivalent to a negligence standard of reasonableness...."); *Gauthier*, 788 F.2d at 637 ("[M]ost Circuits have come to the opposite conclusion and held that there is no practical difference between strict liability and negligence in defective design cases....").

Given that design defect and negligence cases are analytically similar, I see no basis for applying the policies of CRE 407 in one instance but not the other. In my view, determining whether a product is "defective" and "unreasonably dangerous" involves a determination of whether the manufacturer engaged in culpable behavior. Consequently, evidence of a defective design is essentially the same as evidence of "culpable conduct" for purposes of CRE 407. *See* Marcie J. Freeman, Comment, *Spanning the Spectrum: Proposed Amendments to Federal Rule of Evidence 407*, 28 Tex. Tech L.Rev. 1175, 1181 (1997) (noting that unless "culpable conduct" includes some forms of strict liability, the phrase is "mere surplusage"). Thus, I would follow federal law and hold

that CRE 407 excludes evidence of subsequent repairs in design defect cases premised on strict liability.

### B.

Because the majority concludes that CRE 407 does not apply, it does not discuss the rule's feasibility exception. However, the court of appeals concluded that the exception allowed evidence of post-accident design changes in this case because Forma contested the feasibility of such changes. In my view, feasibility was not controverted. Therefore, I would reverse the court of appeals.

While CRE 407 excludes evidence of subsequent repairs if offered to prove negligence or culpable conduct, it allows such evidence to prove "feasibility of precautionary measures, if controverted." CRE 407. However, the feasibility exception is not an "open sesame." *See McPadden v. Armstrong World Indus. Inc. (In re Joint E. Dist. and S. Dist. Asbestos Litig.)*, 995 F.2d 343, 345 (2d Cir.1993). Evidence should not be admitted pursuant to the exception unless there is a genuine issue of feasibility. *See* Fed. R.Evid. 407, committee cmt. Feasibility is not controverted merely because the manufacturer contends that its design was acceptable or explains that pre-accident precautions were not taken because of certain design tradeoffs. *See Grenada Steel*, 695 F.2d at 888; *Gauthier*, 788 F.2d at 638.[10]

To show its product was not defective, Forma explained why it rejected certain power switch designs. In particular, Forma claimed that it designed the switch without a protective cover to make it visible and readily accessible. According to Forma, these traits helped to ensure that the freezer would be turned off before it was unplugged, thereby reducing the risk of electrical arcing. Forma stated that because the freezer operated at a current above 7.2 amps, any arcing between the outlet and the plug posed a high danger of fire or electrocution.

In my view, Forma did not argue that an alternative switch design was not feasible.

---

10. In some circumstances, courts have concluded that unless the defendant makes an unequivocal admission, the feasibility of an alternative design is deemed controverted. *See Meller v.*

*Heil Co.*, 745 F.2d 1297, 1300 n. 7 (10th Cir. 1984). However, the feasibility exception should not be read so broadly that it engulfs the primary rule. *See McPadden*, 995 F.2d at 345.

Forma simply explained that the pre-accident design was implemented to avoid the hazards of electrical arcing. Such an explanation does not place the issue of feasibility in dispute. *See Flaminio*, 733 F.2d at 468 (a design tradeoff involving competing safety concerns does not raise an issue of feasibility); *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 764 (5th Cir.1989) (by arguing that instructions in a product handbook are acceptable, a defendant does not contest the feasibility of better instructions); *Bauman v. Volkswagenwerk Aktiengesellschaft*, 621 F.2d 230, 233 (6th Cir.1980) (by claiming that a design was changed to comply with government regulations, a defendant does not raise a controversy on the question of feasibility). Furthermore, Forma's expert testified that a different switch design was feasible prior to the accident:

> COUNSEL: [B]ack in 1990, could Forma have put some guarding or additional protection on its on/off switch?

> WITNESS: I am quite confident that they could have.

### III.

Because I believe that CRE 407 applies and that feasibility is not a genuine issue in this case, I would exclude evidence of Forma's post-accident design changes. Accordingly, I would reverse the court of appeals and remand for a new trial.