FILED
United States Court of Appeals
Tenth Circuit

October 14, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KAREN KOKINS; THE CITY OF
WESTMINSTER, a Colorado
municipality,

        Plaintiffs-Appellants,

v.

TELEFLEX, INCORPORATED, a
foreign corporation,

        Defendant-Appellee.

No. 08-1272

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:06-CV-01018-WDM-KLM)**

---

Scott R. Larson, of Scott R. Larson, P.C., Denver, Colorado, for Plaintiffs-Appellants.

Laurin D. Quiat (Cory M. Curtis with him on the brief), of Baker & Hostetler LLP, Denver, Colorado, for Defendant-Appellee.

---

Before **BRISCOE**, Chief Judge, **TYMKOVICH**, and **HOLMES**, Circuit Judges.

---

**HOLMES**, Circuit Judge.

---

Appellants Karen Kokins and the City of Westminster sued Teleflex in this products liability action. The jury returned a verdict for Teleflex. Appellants

now ask us to grant them a new trial because they claim that the district court improperly instructed the jury on two issues. First, Appellants contend that the district court failed to give the appropriate instruction for determining whether a product is defectively designed. Second, they allege that the district court erred by instructing the jury regarding a Colorado statutory presumption of non-defectiveness. Because we conclude that the district court did not err, we **AFFIRM** its entry of judgment for Teleflex.

## I.      BACKGROUND

Ms. Kokins was employed as a park ranger for the City of Westminster, Colorado, at the City's Standley Lake facility. On July 6, 2004, she was on duty and patrolling the lake by boat when the boat's steering cable suddenly snapped, causing the boat to careen sharply and throwing Ms. Kokins overboard. She sustained serious and lasting injury to her ankle as a result of the accident. Despite five surgeries, she has not regained normal use of it. Ms. Kokins and the City brought suit in Colorado state court against Teleflex, the maker and seller of the steering cable, alleging, *inter alia*, that the cable was defectively designed and unreasonably dangerous. Ms. Kokins sought damages in connection with her injuries. The City sought to recover the amount it had paid Ms. Kokins in workers' compensation. Pursuant to 28 U.S.C. § 1441, Teleflex removed the case to federal district court based on diversity of citizenship.

2

## A.   Evidence Presented at Trial

The parties agreed that the steering cable snapped because water had entered its inner core and caused it to rust.[1]  But they disagreed about how the water got there, and whether the cable could have been designed to avoid such corrosion.  This made the design of the cable a critical disputed issue at trial.

Appellants alleged that the cable was defective in two ways.  First, they argued that a design defect allowed water to invade the cable, causing its carbon-steel core to rust.  Appellants' experts presented evidence of how water entered the core and contended that grease fittings or O-rings could have sealed gaps in the cable.  Teleflex's experts responded with evidence that the cable on Ms. Kokins's boat was incorrectly installed.  Teleflex also pointed out that boat operators are instructed to regularly grease the cable to prevent water penetration, and elicited testimony that City employees had failed to undertake this routine

---

[1]      In its brief, Teleflex describes the cable as follows:

> The steering cable is comprised of two main components: the inner core assembly and the outer jacket. The inner core assembly is composed of wire rope, surrounded by a carbon steel helical cable which is in turn encased in water-proof grease. The inner core assembly is itself enclosed within the water-proof outer jacket. The outer jacket is made up of a white polyethylene sheath, which is surrounded by wire wrap and finally encased in a black polyethylene sheath.

Aplee. Br. at 3 (citations omitted).  Teleflex designed the cable model at issue in the late 1980s, updating a prior model designed in the early 1960s.

3

maintenance. One Teleflex engineer testified that of the four to five million cables sold since the early 1960s, none had failed in the manner of the cable installed in Ms. Kokins's boat.

Second, Appellants contended that the cable was defective because its inner core should have been made of stainless steel rather than carbon steel. Stainless steel was a safer choice, Appellants claimed, because it was less prone to corrode if water did invade the cable core. Teleflex countered with expert testimony that carbon steel is preferable because it is stronger than stainless steel. Further, experts for Teleflex testified that carbon steel expands when it rusts, causing the cable to stiffen, making the boat more difficult to steer, and alerting the operator that the cable needs to be replaced. By contrast, stainless steel is subject to sudden cracking under stress and provides no advance warning that it is deteriorating.

Altogether the jury heard testimony about the design, use, and installation of the cable from eight witnesses—a forensic engineer, a mechanical engineer, two mechanics, a metallurgist, a consultant, a product assurance manager for Teleflex, and a former Teleflex senior design engineer.

### B. Disputes Concerning Jury Instructions

The two disputes forming the basis for this appeal arose when it came time to instruct the jury. First, the parties disagreed about the proper instruction for determining whether a product is defectively designed and unreasonably

4

dangerous.  Colorado law provides two different tests.  Under the "consumer expectation" test, the jury is instructed to find defectiveness if the plaintiff proves that a product is dangerous "to an extent beyond that which would be contemplated by the ordinary consumer who purchases it."  *Ortho Pharm. Corp. v. Heath*, 722 P.2d 410, 413 (Colo. 1986) (quoting Restatement (Second) of Torts § 402A cmt. I (1965)) (internal quotation marks omitted), *overruled on other grounds by Armentrout v. FMC Corp.*, 842 P.2d 175 (Colo. 1992).  Under the "risk-benefit" test, the jury is instructed to conclude that a product is unreasonably dangerous if the plaintiff proves that the risks of a challenged design outweigh its benefits.  *Armentrout*, 842 P.2d at 182–84.  Appellants submitted instructions proposing that the district court instruct the jury under *both* tests, but the district court gave only the risk-benefit instruction.

The second dispute centered on the applicability of Colorado Revised Statute § 13-21-403(3), which creates a presumption that a product is not defective once it has been on the market for ten years.  Over Appellants' objections, the district court instructed the jury on the presumption.

The jury returned a verdict for Teleflex and the district court entered judgment accordingly.  Ms. Kokins and the City timely appealed.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. DISCUSSION

### A. Jury Instruction for Defective Design

Appellants first argue that the district court erred when it refused to instruct the jury on Colorado's consumer expectation test. We detect no error in the instruction given by the district court.

#### 1. Standard of Review

"We review the district court's decision about whether to give a particular instruction for abuse of discretion." *Martinez v. Caterpillar, Inc.*, 572 F.3d 1129, 1132 (10th Cir. 2009). "We review the trial court's conclusions on legal issues de novo, however, and need not defer to its decisions on questions of law." *City of Wichita v. U.S. Gypsum Co.*, 72 F.3d 1491, 1495 (10th Cir. 1996).

In a diversity case like this one, the substance of jury instructions is a matter of state law. *City of Wichita*, 72 F.3d at 1494–95; *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 77–80 (1938). In such a case, our task is "not to reach [our] own judgment regarding the substance of the common law, but simply to ascertain and apply the state law." *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003) (quoting *Huddleston v. Dwyer*, 322 U.S. 232, 236 (1944)) (internal quotation marks omitted). To properly discern the content of state law, we "must defer to the most recent decisions of the state's highest court." *Id.* Of course, by the principles of stare decisis, we also are bound by our own prior interpretations of state law. "[W]hen a panel of this Court has rendered a

6

decision interpreting state law, that interpretation is binding on district courts in this circuit, *and* on subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue." *Id.* (emphasis added).

### 2. Legal Background

Appellants argue that the district court misapplied Colorado law when it refused to instruct the jury on both the consumer expectation test and the risk-benefit test. To grapple with this contention, we must discern the import of Colorado law.

The guiding case for us is *Camacho v. Honda Motor Co., Ltd.*, 741 P.2d 1240 (Colo. 1987). The plaintiff in *Camacho* crashed his motorcycle and injured his legs. He sued Honda, the manufacturer of the motorcycle, alleging that the vehicle was defectively designed because it lacked steel crash bars that would have protected his legs and lessened the severity of his injuries. *Id.* at 1242. The trial court granted Honda's motion for summary judgment, applying a form of the consumer expectation test and concluding that the risk of leg injury was obvious and foreseeable to any purchaser of a motorcycle. *Id.* The Colorado Supreme Court reversed and remanded, holding that the consumer expectation test was inadequate under these circumstances. "Total reliance upon the hypothetical ordinary consumer's contemplation of an obvious danger," the court reasoned, "diverts the appropriate focus and may thereby result in a finding that a product is not defective even though the product may easily have been designed to be much

7

safer at little added expense and no impairment of utility." *Id.* at 1246; *see also*

*id.* at 1247 n.8.

In reaching this result, the court offered a standard for identifying those

cases where the consumer expectation test would not be sufficient:

> [E]xclusive reliance upon consumer expectations is a particularly inappropriate means of determining whether a product is unreasonably dangerous . . . where both the unreasonableness of the danger in the design defect and the efficacy of alternative designs in achieving a reasonable degree of safety must be defined primarily by technical, scientific information.

*Id.* at 1246–47 (citing *Ortho Pharm. Corp.*, 722 P.2d at 414); *see also*

*Armentrout*, 842 P.2d at 180–82 (discussing the *Camacho* standard); *White v.*

*Caterpillar, Inc.*, 867 P.2d 100, 104–06 (Colo. App. 1993) (applying *Camacho* to

conclude that the trial court erred by not instructing the jury concerning the risk-

benefit test).

Our court was called upon to apply *Camacho* in *Montag v. Honda Motor*

*Co. Ltd.*, 75 F.3d 1414 (10th Cir. 1996). In that case, we rejected Appellants'

claim that the district court had erred by not giving a combination of both

instructions to the jury. "The Colorado Supreme Court," we stated, "has held that

complex product liability claims involving primarily technical and scientific

information *require* use of a risk-benefit test *rather than* a consumer expectations

test." *Id.* at 1418–19 (emphasis added).

8

### 3.    Proceedings before the District Court

The district court considered extensive arguments on whether to instruct the jury in accordance with the consumer expectation test, the risk-benefit test, or both.  Appellants argued that both instructions should be given.  On the other hand, Teleflex urged the district court to instruct the jury only under the risk-benefit test.  Acknowledging that it was a "difficult call," the court agreed with Teleflex and decided to give only the risk-benefit instruction.  In explaining its decision the court stated:

> I am going to go on the basis of the risk harm instruction only to avoid jury confusion in a case that seems here to be premised on an unusual set of circumstances of an alleged design defect allowing a break to occur in circumstances where the alternative suggested is much beyond the knowledge of the ordinary consumer and it is based upon distinctions primarily technical and scientific, namely whether there is an alternative design of stainless steel to carbon.

Aplt. App. at 815.  Later, the district court explained further that its conclusion was "based upon what seems to be *the mandate* that the risk benefit formulation be used where you are dealing with technical or scientific information beyond the normal—what would be expected of the normal consumer."  *Id.* at 866 (emphasis added).  It seems to us that the best interpretation of the statements above is that the district court held that (1) this case involved primarily technical and scientific evidence, and (2) it thus was required to give only the risk-benefit instruction.

9

The district court accordingly rejected Appellants' request to instruct the jury on both tests and instead gave the following instruction: "A product is unreasonably dangerous because of a defect in its design if it creates a risk of harm to persons or property that is not outweighed by the benefits to be achieved from such design." *Id.* at 966.

### 4. The District Court Did Not Err

On appeal, Appellants seem to contend that two errors underlie the district court's failure to give the consumer expectation instruction. First, Appellants argue that the district court erred "because it excluded the 'consumer expectation' test as a possible basis for liability under Colorado law," Aplt. Opening Br. at 25, instead instructing the jury on the risk-benefit test and effectively treating the two tests as mutually exclusive. Second, Appellants contend that the court erred in concluding that this case involved *primarily* technical and scientific information: "An ordinary person can understand, without the benefit of scientific or technical information, that it is unreasonable to use a material that will rust and corrode in a marine steering cable . . . . In short, rust is not rocket science." *Id.* at 22.

### a. Exclusion of the Consumer Expectation Test

We first address Appellants' argument that the district court erred by concluding that, once it found that this case involved primarily technical and scientific information, it was required to give only the risk-benefit instruction. In support of their allegation of legal error, Appellants hold up *Biosera, Inc. v.*

10

*Forma Scientific, Inc.*, 941 P.2d 284 (Colo. App. 1996), for the proposition that "the 'consumer expectation' and 'risk/benefit' tests are not mutually exclusive; both tests can be applied in the appropriate circumstances." Aplt. Opening Br. at 21.

In *BioSera*, the Colorado Court of Appeals did appear to conclude that the two tests were not mutually exclusive. The *BioSera* court stated that "we do not read *Camacho* as precluding application of the consumer expectation test in an appropriate case." 941 P.2d at 287. "Rather, a court should review each [test] to determine if it is an appropriate standard for judging the dangerous nature of the product at issue." *Id*. The *BioSera* court concluded that the trial court did not err in instructing the jury on both tests. *Id*. The court reached this result because the issue before it—whether a health care company's freezer that stored blood products was defective because it could be turned off inadvertently by the slightest pressure on its power switch—did "not" involve "the sort of technical, scientific information that would render use of the 'consumer expectation' test inappropriate." *Id*.

In light of *Montag*, however, we interpret Colorado law on this question as follows: where a case is defined primarily by technical and scientific information, the court must use only the risk-benefit test; it may not use the consumer expectation test, and it may not use both tests together. *See Montag*, 75 F.3d at 1419. Appellants seem to acknowledge that we closed the door to their argument

11

in *Montag* when we held that "claims involving primarily technical and scientific information *require* use of a risk-benefit test *rather than* a consumer expectations test." *Id.* (emphasis added). But Appellants would distinguish or ignore this precedent, arguing that the "suggestion that *Montag* somehow ties this Court's hands and prevents it from considering the analysis in *Biosera* . . . is flawed." Aplt. Reply Br. at 6 n.2.

To the contrary, it is Appellants' argument that is flawed; *Montag* is controlling law. Appellants are correct to note, *see id.*, that "[t]he decision of an intermediate appellate state court is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)) (internal quotation marks omitted). But, as we stated above, "when a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, *and* on subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue." *Wankier*, 353 F.3d 866 (emphasis added). *Biosera* came after *Montag*; however, the Colorado Court of Appeals decided *Biosera*, so it is not an "intervening decision of the state's *highest court*." *Id.* (emphasis added). And Colorado's highest court, the Colorado Supreme Court, has not offered any intervening guidance—through

12

interpretation of *Camacho* or otherwise—indicating that a trial court is authorized

to instruct the jury in products liability cases that are defined primarily by

technical and scientific information regarding the consumer expectation test, in

addition to the risk-benefit test.  Thus, we appropriately apply *Montag* here.

Consequently, we conclude that the district court committed no legal error when

it held that it was required to instruct the jury on only the risk-benefit test.[2]

### b.　　"Primarily" Technical and Scientific Information

Appellants also contend that the district court erred in instructing the jury

concerning the risk-benefit test in any event because the case does not involve

---

[2]　　Separately, Appellants contend that the district court committed error by not instructing on both tests because "the consumer . . . is entitled to the maximum of protection" under Colorado products liability law.  Aplt. Opening Br. at 24 (quoting *Camacho*, 741 P.2d at 1246) (internal quotation marks omitted).  In light of this goal, Appellants argue, Colorado courts have "approved use of the 'risk/benefit' test to *expand* the liability of product manufacturers, not to restrict it."  *Id.* (emphasis added). Appellants seem to argue that, in weighing how to instruct the jury, courts are required to put a thumb on the scale and choose the instructions that will maximize the likelihood of a plaintiff's recovery.

Appellants misunderstand Colorado law. Though *Camacho* justified its adoption of the risk-benefit test as a way to further the public policy underlying the doctrine of strict liability in tort, neither that case nor any other suggests that Colorado courts are guided by a public policy that the consumer should win every disputed legal issue.  To the contrary, several of the very cases cited by Appellants reversed jury verdicts at the request of the manufacturer.  *See, e.g.*, *Armentrout*, 842 P.2d at 183 (holding that the burden is on the consumer, not the manufacturer, to show that the benefits of a proposed design alternative outweigh the risks, and remanding for a new trial); *Ortho Pharm. Corp.*, 722 P.2d at 415–16 (remanding for a new trial at the request of a manufacturer because "[t]he failure of the trial court to give an instruction on the risk-benefit test was reversible error").

13

*primarily* technical and scientific information. In that regard, Appellants assert: "Although the case does involve *some* technical and scientific information, an ordinary person can form reasonable expectations regarding the dangerous risks posed by the cable and the efficacy of alternative designs." Aplt. Reply Br. at 11 (emphasis added); *see also id.* at 7 ("Plaintiffs have never argued that this case does not involve *some* technical and scientific information." (emphasis added)). We discern no error.

To assess this argument we must look to Colorado cases to see which products they have deemed to involve primarily technical and scientific information. We have already reviewed *Camacho*, in which the Colorado Supreme Court found that the feasibility of installing leg guards on a motorcycle was defined primarily by technical and scientific information because "manufacturers of such complex products as motor vehicles invariably have greater access than do ordinary consumers to the information necessary to reach informed decisions concerning the efficacy of potential safety measures." 741 P.2d at 1247.

In *Ortho Pharmaceutical Corp.*, the direct predecessor to *Camacho*, the Colorado Supreme Court found that the dangerousness of an oral contraceptive was defined primarily by technical and scientific information. 722 P.2d at 414. The court determined that the plaintiff's claim that her estrogen dose was too high could not be resolved without balancing the risks and benefits of the chemical

14

composition of the drug. *Id*. As three Justices later described it, the *Ortho* court reasoned that "[a] consumer of drugs cannot realistically be expected to foresee dangers in prescribed drugs which even scientists find to be complex and unpredictable." *Camacho*, 741 P.2d at 1251 (Vollack, J., dissenting).

In *Armentrout*, a crane oiler sued the crane manufacturer to recover for injuries that he suffered when he was trapped in a pinch point between moving parts of the crane. *See* 842 P.2d at 178. In discussing the legal principles governing design-defect claims in Colorado, the court noted that "[t]he instruction given by the trial court incorporate[d] the rule that whether a product is 'unreasonably dangerous' is to be determined under a risk-benefit analysis." *Id.* at 182. *See also White*, 867 P.2d at 105–06 (holding that the trial court erred by instructing the jury under the consumer expectation test, "rather than" under the risk-benefit test, where a truck driver alleged that his gasoline-delivery truck exploded due to a defectively designed engine).

In light of these cases, we conclude that this case primarily involved technical and scientific information. In particular, there was testimony of this sort about the steering cable, its manufacture and design, the measures taken to keep water from entering its inner core, the possible avenues of entry for water into the core, and the chemical and physical properties of two different kinds of steel. Even if this information was not as technical and scientific as the level of estrogen found in the oral contraceptive at issue in *Ortho Pharmaceutical Corp.*,

15

it seems that the design of the steering cable was at least as technical and scientific—if not more so—than the design of a motorcycle without leg guards in *Camacho* or the design of a crane with a dangerous pinch point in *Armentrout*.

Although common knowledge of rust may have aided the jury's understanding of the issues, both parties proffered technical and scientific evidence from various expert witnesses. Indeed, Appellants themselves called as witnesses two boat mechanics, *see* Aplt. App. at 159–60, 316–17, a mechanical engineer, *see id.* at 219–20, and a forensic engineer and a metallurgist, *see id.* at 268–69. Appellants' arguments appear to tacitly acknowledge that the issue for the jury's consideration was one of a technical and scientific nature. *See* Aplt. Opening Br. at 7 ("Plaintiffs' experts testified that it would be foreseeable to *any engineer* that water would likely enter the carbon steel core in a marine environment and cause corrosion." (emphasis added)).

Thus, we hold that the district court did not commit error in determining that, if it concluded that the case involved primarily technical and scientific information, then it was required to instruct the jury only in accordance with the risk-benefit test. Nor do we believe that the district court erred in concluding that this case involved primarily technical and scientific information.

16

**B. Jury Instruction on Presumption of Non-Defectiveness**

Appellants' second contention is that the district court erred by instructing the jury under Colorado law that a product is presumed not to be defective once it has been on the market for ten years. We disagree.

**1. Standard of Review**

As discussed in the context of Appellants' first argument, we review a district court's decision to give a jury instruction for an abuse of discretion. *Martinez*, 572 F.3d at 1132. However, "[w]hether a jury was properly instructed in accord with the applicable law and consistent with matters properly within its province is a question we review de novo." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1240 (10th Cir. 2004). "The determination of the substance of a jury instruction in a diversity case is a matter of state law . . . ." *City of Wichita*, 72 F.3d at 1494.

**2. Legal Background**

At issue here is Colorado Revised Statute § 13-21-403(3), which provides that, in a products liability case, "[t]en years after a product is first sold for use or consumption, it shall be rebuttably presumed that the product was not defective and that the manufacturer or seller thereof was not negligent and that all warnings and instructions were proper and adequate."

In 1992, the Colorado Supreme Court held, in *Mile Hi Concrete, Inc. v. Matz*, 842 P.2d 198 (Colo. 1992), that it was improper to instruct the jury

concerning the presumption of § 13-21-403(3).  *See Mile Hi*, 842 P.2d at 205.  In reaching this conclusion, the court focused on the substantive legal context. Specifically, it stated:

> To establish liability, a plaintiff must prove each element of a claim for relief by a preponderance of the evidence.  A plaintiff has the burden of persuasion as to the defective condition of a product. Regardless of whether a product liability action is grounded in negligence or strict liability, a plaintiff must prove that the product was defective.

*Id.* (citation omitted).  The court noted that Colorado's evidence law—specifically, Colorado Rule of Evidence 301[3]—provided that "a presumption does not shift the burden of persuasion."  *Id*.  It reasoned that "[i]t is precisely because the plaintiff (the party against whom the presumption is directed) already has the burden of going forward with evidence in this case [as to the issue of defect *vel non*] that an instruction based on the statutory presumption of section 13-21-403(3) is meaningless."  *Id.*  Under the court's rationale, "a plaintiff who has presented sufficient evidence to defeat a motion for a directed

---

[3]     The rule states that:

> In all civil actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes upon the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of non-persuasion, which remains throughout the trial upon the party on whom it was originally cast.

Colo. R. Evid. 301.

18

verdict has *necessarily* rebutted the presumption of section 13-21-403(3)" and, consequently, "no reason exists for a trial judge to instruct a jury" on it.[4] *Id.* (emphasis added). The court further observed that under Colorado law "[t]he only effect of the statutory presumption of section 13-21-403(3) is to impose the burden of going forward on the party against whom it is directed." *Id.* at 207. In this regard, the court specifically noted that "[t]he presumption of section 13-21-403(3) is not evidence."[5] *Id.* at 206.

We followed *Mile Hi* in *Perlmutter v. U.S. Gypsum Co.*, 4 F.3d 864 (10th Cir. 1993), affirming the district court's refusal to instruct the jury under § 13-21-403(3). "Under *Mile-Hi Concrete*," we held, "it is not necessary to instruct the jury on the presumption contained in section 13-21-403(3) if the plaintiff has presented evidence sufficient to survive a motion for a directed verdict." *Id.* at

---

[4]  This interpretation of the effect of the presumption is in accord with "[t]he most widely followed theory of presumptions," often referred to as the "bursting bubble" theory. *Tafoya v. Sears Roebuck & Co.*, 884 F.2d 1330, 1337 n.13 (10th Cir. 1989), *overruled on other grounds as recognized by Wagner v. Case Corp.*, 33 F.3d 1253, 1257 n.4 (10th Cir. 1994); *see* 2 Kenneth S. Broun, *McCormick on Evidence* § 344 at 508 (6th ed. 2006) ("The most widely followed theory of presumptions in American law . . . has become known as the Thayer or 'bursting bubble' theory . . . .").

[5]  Chief Justice Rovira, joined by Justice Vollack, dissented. They would have held that § 13-21-403(3)'s presumption "*does* constitute evidence." *Mile Hi*, 842 P.2d at 207 (Rovira, C.J., concurring in part and dissenting in part) (emphasis added). "So finding would enable this court to give some effect to the legislature's action in passing this statute and thereby avoid a finding that the legislature passed a law which is utterly meaningless and ineffective . . . ." *Id.* (citations omitted).

19

875. Further, in *Wagner v. Case Corp.*, 33 F.3d 1253, 1256–57 (10th Cir. 1994), applying the logic of *Mile Hi*, we reached a like conclusion regarding another presumption of section 13-21-403—specifically, a presumption found in section 13-21-403(1)(a)).

In 2003, the Colorado General Assembly amended the statute, adding section 13-21-403(4), which provides: "In a product liability action in which the court determines by a preponderance of the evidence that the necessary facts giving rise to a presumption have been established, the court *shall* instruct the jury concerning the presumption." *See* 2003 Colo. Session Laws 1289–90 (emphasis added). No Colorado court has yet determined how § 403(4) affects the holding of *Mile Hi*.

### 3. Proceedings before the District Court

Without substantial guidance from the Colorado courts, the district court in this case was called upon to determine whether section 13-21-403(4) effectively overruled *Mile Hi*. Appellants contended that *Mile Hi* was still controlling; Teleflex countered that the new statute superceded *Mile Hi* and effected a substantive change in Colorado products liability law. After acknowledging the difficulty of the question, the district court concluded that section 13-21-403(4) had displaced *Mile Hi* in favor of a "statutory mandate as a part of those statutes which enable the product liability actions in Colorado. And [the presumption] is part of the substantive law of the right to recover in Colorado, and it is a

20

mandated part of that right." Aplt. App. at 958. Accordingly the district court

instructed the jury as follows:

> Presumptions are legal rules based on experience or public policy. They are established in the law to assist the jury in determining the truth.
>
> Colorado law provides that if you find that this type of steering cable was first sold for use or consumption 10 or more years before plaintiff's injuries, it is presumed that the steering cable was not defective. However, the presumption is rebuttable and you may consider this presumption together with all other evidence in the case in deciding whether the plaintiff has proved by a preponderance of the evidence that the steering cable was defective.

*Id.* at 967.

### 4.  The District Court Did Not Err

Appellants now contend that the district court erred by instructing the jury

on the presumption. They make two arguments.[6] First, Appellants argue that

presumptions are a matter of procedure, not substance, and thus they are

---

[6]     Appellants raised an additional objection to the presumption instruction before the district court—specifically, that the presumption did not apply because the particular steering cable at issue here was less than ten years old. The district court rejected this argument because it interpreted the phrase "[t]en years after *a* product is first sold for use or consumption," Colo. Rev. Stat. § 13-21-403(3) (emphasis added), to mean "*a type* of product and not *the* particular product." Aplt. App. at 960 (emphasis added). Appellants do not raise this argument on appeal. Accordingly, they have waived (that is, abandoned) it. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."); *accord Krastev v. I.N.S.*, 292 F.3d 1268, 1280 (9th Cir. 2002) ("Issues not raised on appeal are deemed to be waived.").

21

controlled by federal rather than state law. The federal law on this issue, Appellants claim, can be found in *Perlmutter* and *Wagner*, which held that it was error for a trial court to instruct the jury concerning certain presumptions of section 13-21-403. Second, if state law does apply, Appellants contend that section 13-21-403(4) did not undermine *Mile Hi*'s holding that section 13-21-403(3) is merely a rebuttable presumption—that disappears from a case if the plaintiff survives a motion for directed verdict—and, consequently, is not the appropriate subject of a jury instruction. Teleflex responds that this case is governed by state law, and contends that when the Colorado General Assembly added section 13-21-403(4), it overruled *Mile Hi* and "changed the effect of the ten-year presumption." Aplee. Br. at 14. Both of these arguments are legal in nature, so our review is de novo.

### a.      State Law Controls

As to the first argument, Appellants are incorrect: the question before us is governed by state, not federal, law. Our polestar is Federal Rule of Evidence 302, which provides: "In civil actions and proceedings, the effect of a presumption respecting a fact which is an element of a claim or defense as to which State law supplies the rule of decision is determined in accordance with State law." The advisory committee elaborated on the rule's import:

> It does not follow . . . that all presumptions in diversity cases are governed by state law. In each case cited [where state law was applied], the burden of proof question had to do with a

22

> substantive element of the claim or defense. Application of the state law is called for only when the presumption operates upon such an element. Accordingly the rule does not apply state law when the presumption operates upon a lesser aspect of the case, i.e. "tactical" presumptions.

Fed. R. Evid. 302, advisory committee's note. In the case at hand, Appellants contend that under Rule 302 the district court was required to apply federal law because the presumption is procedural rather than substantive. Teleflex responds that state law provides the rule of decision here because "[t]he presumption at issue affects the core element of Plaintiffs' claim and Teleflex' defense: whether the cable was defective." Aplee. Br. at 16. Teleflex is correct.

The presumption of section 13-21-403(3) operates with regard to the key substantive issue of defect *vel non*. The Colorado Supreme Court in *Mile Hi* clearly recognized this. In particular, the court understood that when section 13-21-403(3)'s presumption was given its ordinary effect under Colorado law, its application to the substantive question of defect rendered an instruction concerning the presumption "meaningless." 842 P.2d at 205. Under Colorado Rule of Evidence 301, section 13-21-403(3)'s presumption did not alter the substantive law's allocation of the burden of proof. *Id.* And, under Colorado's substantive products liability law, plaintiff had the burden of going forward on the defect question. *Id.* Consequently, the *Mile Hi* court reasoned that, once the plaintiff had introduced sufficient evidence concerning the defect issue to survive a directed verdict, section 13-21-403(3)'s rebuttable presumption concerning the

23

absence of a defect was "*necessarily* rebutted" and the presumption no longer had any meaningful role to play. *Id.* (emphasis added).

Therefore, it is patent from *Mile Hi*'s analysis itself that section 13-21-403(3)'s presumption operates with respect to "an element of a claim or defense as to which State law supplies the rule of decision" and, accordingly, the effect of that presumption must be "determined in accordance with State law."[7] Fed. R. Evid. 302.[8]

---

[7] The *Mile Hi* court's ultimate conclusion that "[a]n instruction based on the statutory presumption of section 13-21-403(3) should not be given when there is evidence to the contrary" turned in part on its view that under (extant) Colorado law "[t]he presumption of section 13-21-403(3) is not evidence" and that "[t]he only effect of the statutory presumption of section 13-21-403(3) is to impose the burden of going forward on the party against whom it is directed." 842 P.2d at 206–07. We conclude *infra* that, in enacting section 13-21-403(4), in all material respects, the Colorado legislature overruled that view, turning section 13-21-403(3)'s presumption under certain conditions into a matter for consideration by the jury along with traditional forms of evidence. That conclusion, however, has no impact on our analysis here. Whether section 13-21-403(3)'s presumption is viewed as a tool for ordering the presentation of proof concerning the issue of defect or as substantive proof concerning that issue, it is clear that the presumption operates with regard to "an element of a claim or defense as to which State law supplies the rule of decision," Fed. R. Evid. 302—i.e., the element of defect in a products liability action—and, accordingly, state law must control our disposition here.

[8] Furthermore, our conclusion concerning the operation of section 13-21-403(3)'s presumption also finds support in the nature of the presumption itself. This presumption cannot be characterized as involving "procedural" tactical matters that "do not express a state's policy toward its litigants." 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 302.02[2][b] at 302-6 (Joseph M. Laughlin ed., 2d ed. 2010) (noting as an example of a procedural or tactical presumption, "the presumption establishing the receipt of a mailed letter," which "operates tactically as a rule of convenience"); *see* Fed. R.

(continued...)

24

Appellants' arguments to the contrary are misguided and unavailing. Their reliance on *Perlmutter* and *Wagner* to support the view that federal law provides the rule of decision here concerning the effect of section 13-21-403(3)'s presumption is misplaced. These cases are certainly federal law in the sense that they are decisions of our court. However, in both *Perlmutter* and *Wagner*, we were interpreting *state* law in the diversity context, not independently applying federal law. It was only through that diversity lens that we determined that Colorado law, which at the time was defined by *Mile Hi*, did not permit the jury to be instructed on certain section 13-21-403 presumptions, including the one embodied in section 13-21-403(3). As we discuss *infra*, to the extent that Colorado's law has shifted direction on this instructional issue, we are obliged in the diversity context to follow suit.

Furthermore, Appellants' assertion that "[t]he decision of a federal court as to whether to give or refuse a tendered jury instruction . . . is governed by federal law and rules," Aplt. Opening Br. at 28-29, is true. But it also is irrelevant. The

_____

[8](...continued)
Evid. 302, advisory committee's note. Instead, it is evident on its face that section 13-21-403(3)'s presumption expresses a state public policy against consumer recovery where a product has been on the market for a substantial period of time. Accordingly, in view of its "substantive policy" nature, we reasonably may conclude that section 13-21-403(3)'s presumption is the kind of presumption that Rule 302's drafters contemplated would fall within its scope. Weinstein & Berger, *supra*, § 302.02[2][a] at 302-5; *see id.* at 302-6 (suggesting that state law should apply under Rule 302 where a statute "effectuated a state policy favoring the plaintiff or the defendant in the particular situation involved").

25

question before us is not whether the district court properly exercised its discretion in "[t]he admission or exclusion of a particular jury instruction." *City of Wichita*, 72 F.3d at 1495. Instead, the focus of the inquiry is whether the district court was authorized as a matter of law to instruct the jury concerning section 13-21-403(3)'s presumption. And the resolution of that inquiry principally turns on the legal effect that should be accorded to the presumption—a matter within the purview of Federal Rule of Evidence 302. Therefore, Appellants' attempt to frame the issue for decision as a question of federal law on the grounds that it relates to giving (or refusing) a particular tendered instruction is misguided.

In sum, guided by Federal Rule of Evidence 302, we are confident that state law controls our assessment of whether the district court erred in instructing the jury concerning section 13-21-403(3)'s presumption.

### b. Interpretation of State Law

To address Appellants' second argument, we must determine whether section 13-21-403(4) had a substantive effect on the nature of the presumption of section 13-21-403(3). *See* 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 302.04[1] at 302-9 (Joseph M. Laughlin ed., 2d ed. 2010) ("[O]nce it is determined that a state presumption must be applied under Rule 302, the court must give the presumption the same effect it would be given under state law."). Appellants essentially contend that it had no substantive

26

impact on section 13-21-403(3)'s presumption and, more specifically, that section 13-21-403(4) does not undermine *Mile Hi*'s holding that the "only effect" of section 13-21-403(3)'s presumption is "to impose the burden of going forward on the party against whom it is directed" and that the presumption is intended to disappear once a plaintiff meets that burden. *Mile Hi*, 842 P.2d at 207. To support their argument, Appellants point out that the Colorado General Assembly did not remove from section 13-21-403(3) the language providing that the presumption is "rebuttable." Aplt. Reply Br. at 17. They also argue that the Colorado Supreme Court's 2009 decision in *Krueger v. Ary*, 205 P.3d 1150 (Colo. 2009), "confirms that [the Tenth Circuit's] interpretation of Colorado's rebuttable presumptions in *Wagner* and *Perlmutter* was correct." *Id.* at 18. Teleflex counters that "there can be no doubt that the statutory amendment was intended by the legislature to change how the presumption operated at trial." Aplee. Br. at 15. As a result, Teleflex reasons, *Perlmutter* and *Wagner* "are no longer good law in Colorado," *id.* at 17, and the Tenth Circuit must reassess Colorado law.

As we noted above, in diversity cases our task is "simply to ascertain and apply the state law." *Wankier*, 353 F.3d at 866 (quoting *Huddleston*, 322 U.S. at 236) (internal quotation marks omitted). "It is axiomatic that state courts are the final arbiters of state law." *United States v. DeGasso*, 369 F.3d 1139, 1145 (10th Cir. 2004). But here there are no relevant Colorado decisions interpreting section

27

13-21-403(4), so we "must attempt to predict what the state's highest court would do." *Wankier*, 353 F.3d at 866.

> As we are sitting in diversity and construing a Colorado statute, we must give it the meaning it would have in the Colorado courts. "To accomplish this objective, this court must begin with the plain language of the statute. If the statute is unambiguous and does not conflict with other statutory provisions, we need look no further."

*Parish Oil Co., Inc. v. Dillon Companies, Inc.*, 523 F.3d 1244, 1248 (10th Cir. 2008) (quoting *People v. Luther*, 58 P.3d 1013, 1015 (Colo. 2002)) (brackets and citations omitted). "In construing statutes, our primary duty is to give full effect to the intent of the General Assembly. . . . [T]he statute should be construed as written since it may be presumed that the General Assembly meant what it clearly said." *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 593 (Colo. 2005) (citations and internal quotation marks omitted). "[W]e may consider the textual context; the statute's legislative history; the state of the law prior to the legislative enactment; the problem addressed by the legislation; and the relationship between the particular legislation and other relevant legislative provisions in an effort to discern the legislative intent." *Colby v. Progressive Cas. Ins. Co.*, 928 P.2d 1298, 1302 (Colo. 1996) (citations omitted); *see also Mile Hi*, 842 P.2d at 207–08 (Rovira, C.J., concurring in part and dissenting in part) (collecting cases on statutory interpretation).

Section 13-21-403(4) states that "[i]n a product liability action in which the court determines by a preponderance of the evidence that the necessary facts giving rise to a presumption have been established, the court *shall* instruct the jury concerning the presumption." Colo. Rev. Stat. § 13-21-403(4) (emphasis added). This plain text indicates that the Colorado General Assembly sought to make clear that, once a showing by a preponderance has been made concerning the facts giving rise to section 13-21-403(3)'s presumption, an instruction regarding the presumption *must* be given.

In the face of this plain language, Appellants would have us believe that "[t]he General Assembly's decision to statutorily require a jury instruction reflects nothing more than a legislative determination that, procedurally, a jury instruction on the presumption will not be confusing to the jury." Aplt. Reply Br. at 16. Setting to one side the observation that this statement seems to concede that the district court here was permitted—though not obliged—to instruct the jury on section 13-21-403(3)'s presumption, such a reading of section 13-21-403(4) would require us to assume that the Colorado General Assembly passed a superfluous statute—one with a mandatory directive that the General Assembly did not intend to be mandatorily implemented. That would be an absurd interpretation. For us to indulge it, we would have to abandon "our primary duty . . . to give full effect to the intent of the General Assembly," *Colo. Water Conservation Bd.*, 109 P.3d at 593, ignore our obligation to consider "the state of

29

the law prior to the legislative enactment," *Charnes v. Boom*, 766 P.2d 665, 667 (Colo. 1988), and forget that we should consider a statute's "textual context," *Krieg v. Prudential Property & Cas. Ins. Co.*, 686 P.2d 1331, 1335 (Colo. 1984).

Furthermore, Appellants' suggestion that section 13-21-403(4) merely had a procedural effect on the nature of section 13-21-403(3)'s presumption is misguided. Before the amendment, the presumption operated as a procedural tool for ordering proof—the presumption required a finding in favor of non-defectiveness until some credible evidence rebutted that presumption, at which time the presumption disappeared. In the absence of rebuttal, the plaintiff had not met the burden of going forward and a directed verdict was appropriate. *See Mile Hi*, 842 P.2d at 204–07; *see also Beaver v. Fid. Life Ass'n*, 313 F.2d 111, 113 (1963) (discussing the category of presumption that functions "as a procedural tool for ordering proof"); *cf. Krueger*, 205 P.3d at 1154–56 (discussing rebuttable presumptions as tools for burden shifting). *See generally* 2 Kenneth S. Broun, *McCormick on Evidence* § 344 at 506-22 (6th ed. 2006) (discussing the procedural effect of presumptions in civil cases). As a consequence of the 2003 amendment, which introduced section 13-21-403(4), the presumption of section 13-21-403(3) is now accorded substantive effect in the case; it is to be considered by the jury along with traditional forms of evidence, so long as the trial court determines by a preponderance of the evidence that the necessary facts giving rise to the presumption have been established. *See* Colo. Rev. Stat. § 13-21-403(4);

30

*see also Beaver*, 313 F.2d at 113 (applying Kansas law and noting the judicial category of presumption that operates "as a rule of affirmative evidence, which persists to sustain the burden of proving" the presumed fact "until outweighed by the preponderance of the evidence" of the non-existence of that fact, "i.e., it is to be considered as *evidence against evidence*" (emphasis added)); Broun, *supra*, § 344 at 513 (noting that "[a]nother solution . . . is to instruct the jury that the presumption is 'evidence,' to be weighed and considered with the testimony in the case"). Therefore, in enacting section 13-21-403(4), the Colorado General Assembly effectively overruled *Mile Hi*'s interpretation of the "effect" of section 13-21-403(3)'s presumption as being "only" to "impose the burden of going forward on the party against whom it is directed." *Mile Hi*, 842 P.2d at 207. And, consequently, our cases that adopted *Mile Hi*'s interpretation—*viz. Perlmutter* and *Wagner*—no longer accurately reflect Colorado law.

To be sure, as Appellants note, the Colorado General Assembly did not remove the word "rebuttable" from section 13-21-403(3). But the General Assembly's deliberate choice—and we must assume that its choice was deliberate, *see, e.g.*, *Stumph v. Colo. Dep't of Revenue*, 231 P.3d 1, 3 (Colo. App. 2009)—to leave the word in the statute does not mean that section 13-21-403(4) is window dressing. The continuing presence of the word "rebuttable" can be explained readily as an attempt to clarify that the jury is still permitted to conclude that a product is defective, even when the presumption is in force. In other words, it

31

indicates that section 13-21-403(3) does not embody a "conclusive presumption." *See Colby*, 928 P.2d at 1308–09 (Scott, J., dissenting) (noting conclusive presumptions in the Colorado code); *see also* Broun, *supra*, § 344 at 513 (noting "the danger that the jury may infer that the presumption is conclusive").

Further, Appellants offer no reason to think that our reading of the statute is erroneous. To the contrary, all indications from Colorado law suggest that we are on the right path. In *Krueger*—the key case relied upon by Appellants—the Colorado Supreme Court "h[e]ld [that] the rebuttable presumptions of undue influence and unfairness do not continue in a case after they are sufficiently rebutted" and, therefore, that plaintiff's "requested instructions—which inform the jury of the presumptions and require the jury to consider the presumptions in conjunction with all the other evidence to determine whether [the defendant] unduly influenced [the decedent]—are improper." 205 P.3d at 1153, 1156. The court in *Krueger*, however, expressly noted that its discussion of presumptions only covered the "general rule." *Id.* at 1154. *Krueger* does not foreclose the possibility that some "rebuttable presumptions" do not follow the "general rule." 205 P.3d at 1154. And *Krueger* recognized, of course, that "[a] trial court is obligated to correctly instruct the jury on the law applicable to the case." *Id.* at 1157 (quoting *Jordan v. Bogner*, 844 P.2d 664, 667 (Colo. 1993)) (internal quotation marks omitted). Neither *Krueger* nor any other case of which we are aware suggests that the Colorado General Assembly is somehow barred from

32

creating a presumption with substantive effect. *Cf. Ravin v. Gambrell*, 788 P.2d 817, 822 (Colo. 1990) ("Our prior decisions have made clear that when a plaintiff introduces sufficient evidence to establish the presumption of negligence embodied in the doctrine of res ipsa loquitur, *the trial court must instruct the jury* as to the nature and effect of that doctrine." (emphasis added)); *Tafoya*, 884 F.2d at 1336 (noting that "the status and strength of a rebuttable presumption vary according to the force of the policies which motivate a court or a legislature to create it"). And we believe that the General Assembly has done just that by enacting section 13-21-403(4).

In sum, we think it clear that, in adding section 13-21-403(4), the Colorado General Assembly said what it meant and meant what it said: "[i]n a product liability action in which the court determines by a preponderance of the evidence that the necessary facts giving rise to a presumption have been established, the court *shall* instruct the jury concerning the presumption." Colo. Rev. Stat. § 13-21-403(4) (emphasis added). Properly instructed, the jury may consider this presumption along with traditional forms of evidence in the case. This is precisely the conclusion that the district court reached here.

## III.   CONCLUSION

For the foregoing reasons, we reject Appellants' contentions of instructional error. In our view, the district court properly instructed the jury. Accordingly, we **AFFIRM** the judgment for Teleflex.