**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 16, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ARMANDO ANGELES,

    Defendant - Appellant.

No. 16-3354
(D.C. No. 6:15-CR-10154-JTM-4)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BALDOCK**, and **EID**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.
_____

    Armando Angeles appeals the denial of his motion to suppress evidence found in his vehicle after a traffic stop. He argues the stop violated the Fourth Amendment. Exercising jurisdiction under 28 U.S.C. § 1291, we conclude the stop was valid because it was based on reasonable suspicion of a traffic offense. We therefore affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

### A. *Factual History*

On July 27, 2014, Kansas Highway Patrol Trooper Sage Hill stopped Mr. Angeles, who was driving a green Ford Expedition with his children in the back seat. Trooper Hill told Mr. Angeles he pulled him over for twice crossing over the fog line while driving, a violation of a Kansas traffic statute. Mr. Angeles responded that he had turned around to speak with his children. Trooper Hill gave Mr. Angeles a written lane violation warning, told him he was free to go, but then inquired whether he could ask some further questions.

Trooper Hill said there had been a lot of drug trafficking activity between Wichita and Topeka and asked Mr. Angeles if he had anything illegal with him in the car. Mr. Angeles responded that he did not. Trooper Hill then asked if he could search the car, and Mr. Angeles said that he could. In the console of the car, Trooper Hill found what was later determined to be 80 grams of cocaine.

This traffic stop stemmed from a Drug Enforcement Administration ("DEA") investigation of a drug trafficking operation centered in Wichita. The DEA had been monitoring the telephone calls of suspect Gilberto Sanchez. Matthew Lynch, a Sedgwick County, Kansas Sheriff's Office detective, was temporarily assigned to the DEA investigation and testified at the district court suppression hearing about the monitoring activity leading up to Mr. Angeles's arrest.

Detective Lynch testified that, before the stop, agents had identified "suspect phone calls and text messages" containing possible coded language for drug deals

between Mr. Sanchez and Mr. Angeles. The wiretap revealed arrangements for them to meet so that Mr. Sanchez could provide drugs to Mr. Angeles.

During later surveillance of Mr. Angeles, Detective Lynch followed him to the Kansas Turnpike. Based on information that "there was going to be a vehicle northbound in [his] area of responsibility that was possibly tied to illegal drug activity," Trooper Hill received instructions to stop Mr. Angeles, preferably for a traffic violation, but to pull over the car even if he could not find an independent reason to do so. ROA, Vol. 3 at 48-49.

Trooper Hill testified at the suppression hearing that he followed Mr. Angeles's car after spotting it driving north on the Kansas Turnpike toward Topeka. He observed the car cross the white fog line of the highway twice by about a "tire width" each time. ROA, Vol. 1 at 56. Trooper Hill then pulled Mr. Angeles over. He arrested Mr. Angeles after finding the cocaine.

## B. *Procedural History*

Mr. Angeles was indicted for (1) possessing with the intent to distribute cocaine (approximately 80 grams), in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(C); and (2) facilitating the commission of a violation of 21 U.S.C. § 841(a)(1) through use of a cell phone, in violation of 21 U.S.C. § 843(b).

He moved to suppress the evidence under the Fourth Amendment, challenging the Government's contentions "that the initial stop was justified, that the continued detention was consensual, that the trooper had reasonable suspicion to continue the

3

detention, and that the consent was voluntarily and knowingly given." ROA, Vol. 1 at 24. In response, the Government argued that the stop was valid based on (1) the wiretap and surveillance information, and (2) reasonable suspicion that Mr. Angeles had violated Kansas traffic law K.S.A. § 8-1522. It also argued the search was consensual.

The district court denied the motion, upholding the stop on two grounds. *United States v. Angeles*, No. 15-10154-04-JTM, 2016 WL 4060293 (D. Kan. July 29, 2016). First, invoking the "collective knowledge doctrine," the court said "the officer directing the stop had probable cause to believe that Angeles's vehicle" contained drugs based on "all of the intercepted communications," and this knowledge could be imputed to Trooper Hill. *Id.* at *2. Second, "Trooper Hill validly stopped the vehicle for an observed traffic infraction." *Id.*

The district court found the testimony of the Government's two witnesses, Detective Lynch and Trooper Hill, "generally credible." *Id.* at *1. The court also relied on two dashboard video recordings of the stop (from different patrol cars) introduced by the Government for audio corroboration of Trooper Hill's testimony and for evidence of the weather conditions when Mr. Angeles allegedly crossed the fog line.[1]

---

[1] Because "the camera overexposed the visual images due to sunlight during the relevant moments," there is no clear footage of Mr. Angeles's car going over the fog line. ROA, Vol. 1 at 41.

4

Mr. Angeles pled guilty as charged, "specifically reserv[ing] the right to appeal [the district court's] denial of [his] Motion to Suppress" and "maintain[ing] that law enforcement officers unlawfully stopped, detained, and searched [his] vehicle and [him]self on July 27, 2014." ROA, Vol. 1 at 49. At his sentencing, Mr. Angeles received time served and three years of supervised release.

## II. DISCUSSION

On appeal, Mr. Angeles argues only that the district court erred in upholding the traffic stop, contending the collective knowledge doctrine does not apply and Trooper Hill lacked reasonable suspicion of a traffic violation. He does not challenge the length of the detention or his consent to search. We affirm because the district court did not err in holding that reasonable suspicion of a traffic violation justified the stop.

### A. *Scope and Standard of Review*

The Government argues that Mr. Angeles has waived any appellate challenge to the traffic stop because he did not argue that the traffic stop was invalid at the suppression hearing and has not argued plain error on appeal. Whether or not Mr. Angeles preserved his challenge to the traffic stop, and even under the most generous standard of review, we affirm because the district court did not err in upholding the traffic stop based on reasonable suspicion of the traffic infraction under K.S.A. § 8-1522(a).

"[W]e accept the district court's factual findings and determinations of witness credibility unless they are clearly erroneous." *United States v. Moran*, 503 F.3d

5

1135, 1139 (10th Cir. 2007). We view the evidence in "the light most favorable to the ruling." *United States v. Juszczyk*, 844 F.3d 1213, 1214 (10th Cir. 2017); *see also United States v. Mendoza,* 817 F.3d 695, 699 (10th Cir. 2016). "[W]e review de novo the ultimate determination of the reasonableness [of the stop]." *United States v. Leyva-Serrano*, 127 F.3d 1280, 1282 (10th Cir. 1997).

## B. *Analysis*

In *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (en banc) (citations and quotations omitted), this court stated the standard for the constitutionality of a traffic stop:

> [A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring. It is irrelevant, for purposes of Fourth Amendment review, whether the stop in question is sufficiently ordinary or routine according to the general practice of the police department or the particular officer making the stop. It is also irrelevant that the officer may have had other subjective motives for stopping the vehicle. Our sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction.

*See Whren v. United States,* 517 U.S. 806 (1996). Applying these standards here, we conclude the district court did not err in determining that Trooper Hill had reasonable suspicion that Mr. Angeles had committed a traffic violation.

The district court held that Trooper Hill had reasonable suspicion to stop Mr. Angeles based on his observing a violation of K.S.A. § 8-1522(a), which provides:

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules in addition to all others consistent herewith shall apply.

6

(a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

The Kansas Supreme Court construed this statute in *State v. Marx*, 215 P.3d 601 (Kan. 2009). It said that "K.S.A. 8-1522(a) is not a strict liability offense" and that "a violation of K.S.A. 8-1522(a) requires more than an incidental and minimal lane breach." *Id.* at 612. *See Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1295 (10th Cir. 2010) (federal courts must be guided by "recent decisions of the state's highest court" when interpreting state law). In *Marx*, the Kansas Supreme Court held that a vehicle's crossing the fog line once, and then overcorrecting briefly across the centerline within a half-mile to one-mile observed span, was not in itself grounds for reasonable suspicion that K.S.A. 8-1522(a) had been violated. 215 P.3d at 612-613.

At the suppression hearing, Trooper Hill testified that, after spotting Mr. Angeles's car driving north on the Kansas Turnpike from Wichita to Topeka, he observed the car cross the white fog line of the highway twice by about a "tire width" each time. ROA, Vol. 1 at 50, 56. The dashcam video showed no weather reason that would make staying in one's lane impractical. As seen on video, Trooper Hill, upon pulling Mr. Angeles over, asked whether he had been drinking or was distracted, noting that he had swerved over the fog line twice.

Unlike the stop in *Marx*, where the court said crossing the fog line and overcorrecting only once was not enough to justify the stop, Mr. Angeles's two

7

forays fully over the line were enough for a reasonable officer to suspect that there was "more than an incidental and minimal lane breach" in this instance.[2] Also, here, unlike in *Marx*, there was (1) credible evidence that staying in one's lane was practicable (given the weather and road conditions captured by the dashcam videos), and (2) testimony on how far the vehicle crossed over the fog line (about a "tire width.")[3]

"[W]hether reasonable suspicion exists is an objective inquiry determined by the totality of the circumstances." *United States v. Salas*, 756 F.3d 1196, 1201 (10th Cir. 2014). Under the circumstances here, we agree with the district court that Trooper Hill had reasonable suspicion to stop Mr. Angeles.

## III. CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

---

[2] Although there is no post-*Marx* Kansas case on point, we have previously held that a vehicle's drifting onto a shoulder twice in a quarter mile "without any adverse . . . weather conditions to excuse or explain the deviation" created reasonable suspicion that the driver could be a risk to others, under the principles articulated in *Terry v. Ohio*, 392 U.S. 1, 88 (1968). *United States v. Ozbirn*, 189 F.3d 1194, 1199 (10th Cir. 1999).

[3] *See Marx*, 215 P.3d at 613 (noting that "the deputy gave no testimony from which the court could even infer that it was practicable to maintain a single lane" and that the district court found that "no testimony was offered as to how far the motor home crossed . . . the fog line.")